O'SHEA, Respondent, vs. LAVOY, Appellant.

*November 15—December 13, 1921.*

*Automobiles: Liability of owner to invitee: Negligence: Degrees.*

1. The owner of an automobile is not liable for damages to an invited guest riding therein for injuries sustained by the latter, due to the turning over of the machine because of a defective spring, even though it was a second-hand machine and the spring was repaired with old parts.
[2. The question as to what degree of negligence in the *management of an automobile* by its owner will make him liable for damages to an invited guest riding therein and sustaining injuries, discussed but not decided.]

APPEAL from a judgment of the circuit court for Marinette county: W. B. QUINLAN, Circuit Judge.   *Reversed.*

The plaintiff is the father-in-law of the defendant and is about seventy-two years of age.   Both reside at Marinette, Wisconsin.   On July 18, 1920, the defendant started in a Chalmers automobile on a trip to Norway, Michigan, for the purpose of bringing home one of his children who had been visiting at that place.   He took with him his wife, two children, his niece, another lady, and the plaintiff and his wife, whom he invited to make the trip with him.   The car was a 1915 model.   Defendant had purchased it as a second-hand

O'Shea v. Lavoy, 175 Wis. 456.

car in 1919. Sometime prior to this date four leaves of the left front spring broke and defendant took the car to a garage and had the spring repaired. The broken leaves were the second, third, fourth, and fifth from the bottom, there being seven leaves in the spring. The garage man substituted some old leaves which he had in the shop for the broken ones and thus repaired the spring. He took some leaves he had in the garage that were a litle bit too long, cut off the tapered ends and fitted them the same length as the ones that were broken. This was regarded as a temporary job and a new spring was ordered. The garage man told defendant that it would not be good policy to run the car too long with the repaired spring, but that it would be safe as long as he watched himself on the road. The garage man testified that he knew the defendant intended to use the car in an ordinary way and that he considered it entirely good and adequate, temporarily, for that purpose. He further testified that there was nothing unusual about using a repaired job on a spring temporarily before a new spring arrives. In fact, it was quite common to do that in that vicinity. He further testified that any part of a car that is made of steel is apt to crystallize after four or five years' use. Between the time of the repair of the spring and the trip in question defendant ran the car a distance of 1,500 miles, making one trip from Marinette to Milwaukee therewith without any mishap.

While on the trip to Norway they passed over a small bridge near the village of Daggett, Michigan, going at the rate of fifteen to eighteen miles an hour. Almost immediately thereafter the master (top) leaf of the spring broke very near the front end thereof, where it had no support from the other leaves. This caused the left side of the car to drop down, the fender coming in contact with the tire, which made it impossible to turn the car, which at that time was turned a little to the left, and the car slid a short distance and toppled over the edge of the road and down an embankment,

turning completely over, causing injury to the plaintiff, to recover damages for which this action was brought.

The defendant testified that when the leaves broke on the former occasion it did not let the fender of the car down onto the front wheel, and that he did not know that such a result would follow from a breaking of the master leaf.

The material allegations of the complaint were to the effect that plaintiff was riding with the defendant in said car as the defendant's invited guest along a public highway, and that said defendant was then and there driving said automobile at an excessive rate of speed and the said left front spring of the automobile was defective, which fact was well known to the defendant for a long time prior to said date, and which said fact was entirely unknown to this plaintiff; that while it was so driven the said left front spring of said automobile broke, and by reason thereof the said car was thrown over a high embankment, through said defendant's carelessness and negligence. Upon the trial the complaint was amended by striking out the words "at an excessive rate of speed" and the words "at an ordinary rate of speed" were inserted instead, so that the only negligence on the part of the defendant relied upon at the trial was the using of the automobile with the defective spring, which it was alleged was well known to the defendant for a long time prior to said date.

The jury returned a special verdict in which it was found that the defendant was negligent in using the car at the time in question in the condition it then was; that such negligence was the proximate cause of plaintiff's injuries; that no want of ordinary care on the part of the plaintiff proximately contributed to his injuries; that plaintiff did not voluntarily assume the risk of any danger arising out of the operation, with ordinary care, of defendant's car in the condition in which it was at the time when the trip was commenced; and that the damages sustained by plaintiff were $4,800. Upon this verdict judgment was entered in favor of the plaintiff

O'Shea v. Lavoy, 175 Wis. 456.

and against the defendant. From the judgment so entered defendant brings this appeal.

For the appellant there were briefs by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

For the respondent there was a brief by *George Evans* of Marinette and *Martin, Martin & Martin* of Green Bay, and oral argument by *Mr. Gerald F. Clifford* of Green Bay and *Mr. Evans.*

OWEN, J. The automobile is an instrumentality of recent creation which has rapidly established itself in the desires of the people. No other agency has so effectively appealed to their favor. Nothing contributes so much to the comfort and pleasure, the welfare and happiness of the family. It has given a new idea to distances and materially enlarged the orbit of individual existence. It affords recreation which appeals to every member of the family and pleasures which may be indulged by the family unit. It is a minister of health as well as pleasure. It makes the fresh air of the country available to the citizen of the congested city and brings the pleasures of the city within the reach of the rural inhabitant. There are many who cannot afford to own an automobile. There are few who do not covet the comfort, pleasure, and recreation afforded thereby. It is an act of kindness and consideration for the owner of a car to lend its comfort and pleasure through an invitation extended to his less fortunate neighbor for a ride in the country, to join a picnic party, or to enjoy an evening at the theater in the near-by city. This is a species of hospitality which should be encouraged rather than discouraged, and the law should not couple with this friendly act a duty which makes its exercise an unreasonable hazard. On the other hand, he who takes his friends and neighbors into his automobile places them in a high-powered, swiftly-moving vehicle attended with great danger unless handled and operated with

a requisite degree of care. He must realize that he has voluntarily received into his keeping the lives and safety of his passengers, and he should not be permitted to trifle therewith or to renounce all responsibility in such respect.

Upon these general observations we apprehend there is little difference of opinion either in law or in human conscience. The difficulty arises in announcing in concrete form, with some degree of definiteness and workability, the exact extent and nature of this duty. It is a question that has not been discussed or decided by this court. While there are numerous decisions elsewhere, the question is nevertheless of recent origin, and the courts are not in complete accord in their method of its treatment, although there may not be a great practical divergence in the conclusions reached.

It has been held that the owner of a conveyance is liable to an invited guest, who sustains injuries while riding with him, only for gross negligence. *Moffatt v. Bateman,* L. R. 3 P. C. 115; *Coughlin v. Gillison,* [1899] 1 Q. B. 145; *Avery v. Thompson,* 117 Me. 120, 103 Atl. 4; *Epps v. Parrish* (Ga.) 106 S. E. 297. It has also been held that he is liable for ordinary negligence. *Siegrist v. Arnot,* 10 Mo. App. 197; *Perkins v. Galloway,* 194 Ala. 265, 69 South. 875; *Mayberry v. Sivey,* 18 Kan. 291.

There is a line of cases holding that the situation gives rise to the relation of licensor and licensee; that the owner is not bound to furnish a sound vehicle or a safe horse, but is liable for active negligence which increases the hazard or creates a new one. *Patnode v. Foote,* 153 App. Div. 494, 138 N. Y. Supp. 221; *Pigeon v. Lane,* 80 Conn. 237, 67 Atl. 886; *Beard v. Klusmeier,* 158 Ky. 153, 164 S. W. 319; *Fitzjarrell v. Boyd,* 123 Md. 497, 91 Atl. 547.

In Massachusetts it is held that while the legal relation arising between the owner of the automobile and his invited guest is that of licensor and licensee, it is also that of bailor and bailee, the nature of the bailment being that of a gratuitous *mandatum,* and that the owner is liable only for his

acts of gross negligence. *West v. Poor,* 196 Mass. 183, 81 N. E. 960; *Massaletti v. Fitzroy,* 228 Mass. 487, 118 N. E. 168.

A study of the cases, however, reveals a greater consensus of judicial opinion upon the degree of care which should be required of the owner of the automobile under such circumstances than is indicated by the above statement. For instance, in the states holding that the owner is liable for ordinary negligence there is but one degree of negligence recognized. In such states the care which an individual is required to exercise under any particular circumstances is ordinary care, and a failure to exercise the care required constitutes negligence.

In the above cited cases holding that the measure of the duty owing by the owner of the automobile is the same as that which a licensor owes to a licensee, the conduct which brought liability to the owner was rash and reckless, approaching if not constituting gross negligence under our definition of that term. It is to be remarked, however, that the practical application of the doctrine of those cases, that the owner is liable for his active negligence which increases the danger or creates a new one, makes him liable for acts which amount to no more than ordinary negligence. For illustration see *Lowell v. Williams,* 183 App. Div. 701, 170 N. Y. Supp. 596. The doctrine of the Massachusetts cases plainly holds the owner liable only in cases of gross negligence, as the term is understood in that state. But gross negligence, as understood in Massachusetts, comprehends a lesser degree of negligence than is included within our definition thereof.

Thus, it will be seen that the courts have held the owner liable only for a degree of negligence which approximates, but probably is less than, gross negligence, as defined by this court. This may be a just measure of responsibility to place upon the owner. But the problem which confronts us is to devise a rule which will accomplish that result. Would it be

a just rule to hold the owner liable only for gross negligence as known to the jurisprudence of this state? Would this lay upon the owner a just measure of responsibility? Can the status of a gratuitous mandatary logically be imputed to one who transports human beings from place to place? Furthermore, does the rule of liability obtaining between licensor and licensee, which rule is intended to apply principally with reference to the condition of premises, establish a correct measure of responsibility with reference to the operation of an automobile? Would not that rule lead to liability for acts of ordinary negligence, and if so, is that a just rule?

But the question of the liability of the owner of an automobile for damages resulting to his invited guest who is riding therein by reason of his negligent management thereof is not before us in this action and will not be decided. The foregoing discussion is indulged for the purpose of inviting the attention of the profession to the many aspects of the question which must influence the eventual determination thereof, with a view of directing their discussion into helpful channels when they shall have occasion to present that question to the court.

In this case the damage resulted from a defective spring on the automobile. Negligent operation thereof is not claimed. We can see no difference between an invitation extended by a person to dine with him and an invitation extended to ride with him. It has been held by this court that in the former case the legal relation arising was that of licensor and licensee. *Greenfield v. Miller,* 173 Wis. 184, 180 N. W. 834. It follows that the same relation arises in the latter case, which conclusion is supported by authorities already cited. Whether or not the established rules of liability existing between licensor and licensee are applicable in the matter of the *management* of the automobile, they plainly are applicable so far as the *condition* of the automobile is concerned. According to those rules the guest accepts the premises of his host as he finds them, subject only

to the limitation that the licensor must not set a trap or be guilty of active negligence which contributed to the injury. Here the accident happened, as said before, because of a broken spring, and the question is, Did that constitute a trap within the meaning of the rule? That is the only basis upon which liability can be predicated. A trap, within the meaning of this rule as we understand it, is a hidden danger lurking upon the premises which may be avoided if known. Hence it is the duty of the host to advise his guest of its presence so that the guest may enjoy the premises in a se-curity equal to that enjoyed by the host. The guest has no right to a greater security than that enjoyed by the host or other members of his family. The host simply places the premises which he has to offer at the disposal and enjoyment of his guest upon equal terms of security.

In this case the defendant considered the automobile to be in sufficient condition to make the trip. This is evidenced by the fact that he not only intrusted his own safety thereto but that of his wife and children as well. There can be no stronger evidence of the belief of the ordinary well-meaning man in the sufficiency of the car to safely make the trip.

So we have a situation where the owner of an automobile who is about to make a pleasant trip, fully believing in the sufficiency of the car to do so with safety to the occupants, with the best of motives and with a view of promoting his pleasure, invites his father-in-law to ride with him, and by reason of the giving way of some part of the car the father-in-law sustains injuries. Under such circumstances it is clear to us that the father-in-law in accepting the invitation took the car as he found it, was attended by the same measure of security enjoyed by the owner and the other members of his family, and that he was entitled to no more.

Were it material to the decision we would hold that, upon the record, we find nothing which should have led the defendant to believe that the car was unsafe to make the trip nor that he had any reason to anticipate the accident or the

resulting injuries. It is true he had a repaired spring, but he had driven the car 1,500 miles after it was repaired without any indication that it was insufficient in its repaired condition for the purposes to which he devoted the car at the time in question. Besides, it was not the repaired part that gave way. It was the master leaf of the spring, which up to that time had fully performed its service. There is no evidence that the leaves supplied by the repairer did not contribute as much strength to the spring as those which were broken. It is common knowledge that the giving way of most any part of a car that has been used for upwards of five years may be expected, and this we think is the only knowledge with which the defendant could be charged respecting the deficient condition of the car. But knowledge of this is not sufficient to render him liable to those whom he invites to ride with him for injuries resulting from the giving way of the various parts of the car. Furthermore, the accident was a most unusual one to result from the breaking of a spring, and, as we understand it, was due to the peculiar construction of this kind of car. The defendant testified that he did not know that the fender would engage the front wheel in case of the breaking of the front spring; and, if it were necessary to a decision of the case, the question of whether he should reasonably have anticipated the instant results from the breaking of the spring would be a serious one. However, we think neither of these latter questions is involved. We place the decision upon the ground that the owner did not fail in the performance of any duty which he owed to those whom he invited to ride with him. The consequence is that the plaintiff has no cause of action and the complaint should have been dismissed.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the complaint.