24176. LEE *v.* LOTT.

DECIDED OCTOBER 26, 1934.

*Bussey & Fulcher,* for plaintiff in error.

*H. A. Woodward, D. G. Fogarty,* contra.

GUERRY, J. Robert E. Lott brought his action against J. M. Lee to recover for personal injuries sustained while riding as a guest in Lee's car. The accident occurred in the State of South Carolina, and the "guest statute" of that State is pleaded as the basis of recovery. The petition alleges that the plaintiff was invited by the defendant to accompany him as a guest in his automobile to Brunswick, Georgia; that at a point on the road in South Carolina near Yemassee, S. C., he ran his automobile off the paved road while running at a speed of between fifty and sixty miles an hour, such speed being in violation of the South Carolina statute which was set out in the petition; that the defendant regained the roadway without injury and was cautioned by the guests to drive carefully, which he promised to do; that a short time thereafter he again drove the automobile off the pavement, but managed to regain the roadway without injury; that the plaintiff and other passengers offered to drive for the defendant, but he refused to allow them to drive, and stated that he would allow his son-in-law, who was also a passenger, to drive when they reached Yemassee; that a short time thereafter, at a point five miles from Yemassee, and while going at a speed of fifty to sixty miles per hour, and while looking around as he conversed with the occupants of said automobile, he again ran off the roadway onto the soft shoulder of the road, and, without slackening his speed, attempted to pull back onto the paved roadway, but, the pavement being at that point six inches higher than the shoulder, he had to tug at the steering wheel with unusual force, and, when the automobile mounted the pavement, it ran across the pavement and headed for the ditch on the left-hand side of the road, and the defendant abruptly jerked to the right and then to the left, and the automobile turned over completely, twice resulting in described injuries to the plaintiff. The petition further alleged that six weeks prior to this time the defendant ran his automobile over a "silent policeman" in the City of Augusta, and so disarranged his steering apparatus that the car would continuously swerve to the right while it was being driven; that two

weeks before the injury complained of, the defendant carried the car to a garage to have the defective steering apparatus repaired, and that after the alleged repairs it still swerved to the right when driven and the steering apparatus was still defective; "that said accident or injury was caused solely by the gross negligence and heedlessness of the defendant, and his reckless disregard of the rights of others, and was without any contributory negligence of the plaintiff;" that the defendant's negligence consisted in: (*a*) driving in excess of the speed allowed by the statute of the State of South Carolina, therein set out, to wit 45 miles per hour; (*b*) in failing to equip his automobile with a suitable steering apparatus and repair the same seasonably and properly, and keep it in proper working condition; (*c*) that the defendant was "grossly, willfully, and heedlessly negligent, having an utter disregard for the rights of others when he invited plaintiff to travel with him as his guest in his said automobile when defendant knew that the steering apparatus of his said automobile was defective and unsafe for travel and in violation of the law of South Carolina, . . which . . reads as follows: 'Owners of motor-vehicles not responsible for injuries to guests. 1. Guests without payment. No person transported by the owner or operator of a motor-vehicle as his guest without payment for such transportation shall have a cause of action for damages against such automobile, its owner, or operator for injury, death or loss in case of accident unless such accident shall have been intentional on the part of the owner or operator or caused by his heedlessness or his reckless disregard of the rights of others;' (*d*) in operating said motor-vehicle in a wilful, negligent, heedless and reckless rate of speed when defendant knew that the steering-wheel or apparatus of his said vehicle was defective and not in repair, and in violation of the laws of South Carolina as follows: 'It shall be unlawful for any person to ride or drive any horse or mule or bicycle, automobile and locomobile upon any street or alley in any city or town or on any public highway of this State in a wilfully careless or reckless manner.'"

The general and special demurrer interposed to this petition was overruled, and the defendant excepted. The general demurrer was that "no facts are alleged showing that said accident was intentional on the part of the defendant or was caused by his

heedlessness or his reckless disregard of the rights of others," and because the petition affirmatively showed that the plaintiff assumed the risk of the defective condition of the car. There were certain special grounds of demurrer, as to running over a "silent policeman" and having the car repaired, these grounds being, that such allegations were irrelevant, immaterial, and harmful, and inserted for prejudicial purposes; there was a special motion to strike the allegations of negligence in reference to speed and to a failure to have a proper steering apparatus, because they were insufficient to show that the alleged injury was caused by an intentional act or by the heedlessness and recklessness of the defendant or in reckless disregard of his rights.

It will be seen from the statement above made that the conduct claimed to be heedless and in reckless disregard of the plaintiff's rights (as there is no allegation that the accident was intentional) consists in: (a) the unlawful speed of the car; (b) the failure to equip the car with suitable steering apparatus and the failure to inspect and repair the same; (c) the operation of said car while the plaintiff was a guest therein when the defendant knew of the defective condition of the steering apparatus, and (d) the looking back and talking with other occupants of the car while driving it.

There is no statute law in Georgia respecting the right of a guest in an automobile to recover damages for injuries sustained therein from the owner or operator; however, our courts have laid down the principle that "one riding by invitation and gratuitously in another's automobile can not recover for injury caused by the other's negligence in driving, unless it amounted to gross negligence." *Epps* v. *Parrish, 26 Ga. App.* 399 (106 S. E. 297); *Harris* v. *Reid, 30 Ga. App.* 187 (117 S. E. 256); *Peavy* v. *Peavy, 36 Ga. App.* 202 (136 S. E. 96); *Blanchard* v. *Ogletree, 41 Ga. App.* 4 (152 S. E. 116); *Meddin* v. *Karsman, 41 Ga. App.* 282 (152 S. E. 601); *Luxenburg* v. *Aycock, 41 Ga. App.* 722 (154 S. E. 460); *Rosenhoff* v. *Schaul, 42 Ga. App.* 776 (157 S. E. 215); *Wachtel* v. *Bloch, 43 Ga. App.* 756 (160 S. E. 97); *West* v. *Rosenberg, 44 Ga. App.* 211 (160 S. E. 808); *Smith* v. *Hodges, 44 Ga. App.* 318 (161 S. E. 284); *Townsend* v. *Minge, 44 Ga. App.* 453 (161 S. E. 661); *Yearwood* v. *Yearwood, 45 Ga. App.* 203 (164 S. E. 105). See also *Slaton* v. *Hall, 168 Ga.* 711 (148 S. E. 741, 73 A. L. R. 891). In the present case the statute of

South Carolina, which was enacted in 1930, is pleaded, as above set out, and it becomes necessary for this court to construe and apply the South Carolina statute to the facts as set forth in the petition, in order to determine the merits of the general demurrer. It is conceded by both parties in their briefs that the principle enunciated in *White* v. *Seaboard Air-Line Ry.*, 14 *Ga. App.* 139 (80 S. E. 667), that, "Where the laws of a foreign State are pleaded as a basis of an action, the laws of that State are to be applied in determining the plaintiff's right to recover. The laws of a foreign jurisdiction are to be given the same construction by the courts applying the remedy as that given by its court of last resort," is applicable to the case at bar. See also, in this connection, *Ga., Fla. and Ala. Ry. Co.* v. *Sasser*, 4 *Ga. App.* 276 (61 S. E. 505); *Southern Ry Co.* v. *Robertson*, 7 *Ga. App.* 154 (66 S. E. 535); *Hill* v. *Chattanooga Ry. & Light Co.*, 21 *Ga. App.* 104 (93 S. E. 1027); *Southern Ry. Co.* v. *Harper*, 32 *Ga. App.* 267 (123 S. E. 154).

No decision of any court of last resort of the State of South Carolina construing the statute in question seems to have been handed down. However, it is conceded in the briefs of counsel on both sides that the South Carolina statute is verbally the same as the statute of Connecticut, which was passed in 1927, and which appears to have been the first of these so-called guest statutes, and that the decisions of the courts of last resort of the State from which the statute was adopted are to be considered in the construction thereof. The courts of last resort in Connecticut have construed this statute in a number of cases. The first case in which they were called upon to construe the statute was that of Silver *v.* Silver, 108 Conn. 371 (143 Atl. 240, 65 A. L. R. 943), in which it was held: "Section 1 of Chapter 308 of the Public Acts of 1927 provides that 'no person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others.' *Held:* 1. That while the term 'heedlessness,' standing by itself, is frequently synonymous with carelessness or negligence, it could not be thus construed in this

statute, since, to do so, would defeat the obvious purpose of the General Assembly to effect a change in the existing law with respect to the rights of passengers, by limiting recovery to two classes of cases: first, where the accident is caused by intentional misconduct and, second, by heedless or reckless disregard of the rights of others, meaning thereby something more than the mere failure to exercise the care of a reasonably prudent man." The next case is that of Bordonaro v. Senk, 109 Conn. 428 (147 Atl. 136), which goes fully into the meaning of the statute. In that case it was said: "We pointed out in Silver v. Silver, 108 Conn. 371, 375 (143 Atl. 240, 242), that this word [heedlessness] standing by itself is a synonym of carelessness, and construed alone, 'it connotes a lack of care substantially identical with that indicated by the word "negligence." Charging one with careless conduct is equivalent to charging him with a lack of ordinary care. We also held that, if heedlessness in this connection meant merely a lack of ordinary care, the act would have reaffirmed our common law, and that the legislative intention is clearly indicated in the title of the act as well as in the first clause of the first section of the act to be, to change the existing law. We finally disposed of this claimed construction of 'heedlessness' by saying: 'We do not think that is a sensible construction of the statute.' Since this word can not be construed by itself or with its ordinary meaning, we construe it 'with due regard to its context and the meaning of the entire phrase or sentence in which it appears.' [See, in this connection, State v. Sawyer, 104 S. C. 342, 88 S. E. 894; Miley v. Goodwin, 87 S. C. 102, 68 S. E. 1055; § 4, paragraph 8, of the Civil Code of Georgia (1910)]. The framers of the statute undoubtedly used the noun 'heedlessness' in place of the adjective 'heedless' and the word 'or' for 'and.' The phrase 'or caused by his heedlessness or his reckless disregard of the rights of others' meets the legislative intention when it is construed to read, 'or caused by his heedless and his reckless disregard of the rights of others.' The liability of the owner or operator of a motor-vehicle to his nonpaying guest is limited to two classes, as we state in Silver v. Silver, supra: First, when the accident was caused by the intentional act or conduct of the owner or operator. 'Intentional' as used in this connection connotes the causing of the act or conduct purposely, wilfully, or designedly. Second, when the accident was caused by the heedless

and reckless disregard of the rights of others by the act or conduct of the owner or operator. 'Heedless' in this connection means careless: it does not add to the significance or the characterization or the force of the act or conduct done in reckless disregard of the rights of others by the owner or operator. Act or conduct in reckless disregard of the rights of others is improper or wrongful conduct, and constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another." In the further discussion of this case by the court as to the meaning of "wanton misconduct" in that State, the court cites, Menzie *v.* Kalmonowitz, 107 Conn. 197, at page 199 (139 Atl. 698), as follows: "Wanton misconduct is more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action. Wilful misconduct is intentional misconduct, and wanton misconduct is reckless misconduct, which is the equivalent of wilful misconduct." See also Grant *v.* MacLelland, 109 Conn. 517 (147 Atl. 138); Ascher *v.* Friedman, 110 Conn. 1 (147 Atl. 263). It is to be kept in mind that the cases above quoted from were decided by the Connecticut Supreme Court before the adoption of the statute by South Carolina. Both states before the adoption of the statute held to the general rule that the owner or driver of an automobile owed the duty to a guest riding therein of ordinary care. See Silver *v.* Silver, supra.

It is reasonable to presume that the South Carolina General Assembly, in adopting the act, adopted it in view of the construction placed thereon by the courts of Connecticut. See, in this connection, Commonwealth *v.* Huntington, 148 Va. 97 (138 S. E. 651); Graham *v.* State, 109 S. C. 301 (96 S. E. 138). The construction placed upon this statute by the Supreme Court of Connecticut has been followed consistently. See Rindge *v.* Holbrook, 111 Conn. 72 (149 Atl. 231); Potz *v.* Williams, 113 Conn. 278 (155 Atl. 211); Sadinsky *v.* Coughlin, 114 Conn. 585 (159 Atl. 492); Anderson *v.* Colucci, 116 Conn. 67 (163 Atl. 610). In Hull *v.* Seaboard Air-Line Ry., 76 S. C. 278 (57 S. E. 28, 10 L. R. A. (N. S.) 1213), it is said: "Each of the words, wantonness, wilfulness and recklessness, embodies the element of malice, either express or implied, and are in law *substantially* the equivalent of each other, *in*

*so far* as they give rise to an action based upon punitive damages." (Italics ours.)    See also Bussey *v*. C. & W. C. Ry. Co., 75 S. C. 116 (55 S. E. 163) ; Walsh *v*. U. S., 174 Fed. 615.    "When we say that wanton misconduct is the equivalent of wilful misconduct, we do not intend to characterize these terms as equivalents of each other, but as equivalent in result.    Wilful or intentional misconduct and wanton misconduct are different concepts of wrongful or improper misconduct, as we have shown, but in their resultant, they are alike in their seriousness and gravity, and the law subjects whoever is guilty of either form of misconduct to like rules, and visits upon each a like liability."    Bordonaro *v*. Senk, supra.

In 45 C. J. 676, § 43, it is said:    "Wantonness includes the element of heedless or reckless disregard of consequences as affecting the life or safety or property of another, or, as it has been expressed, a willingness to inflict injury or an indifference as to whether injury is inflicted."    In Georgia a very clear distinction has been drawn between wilful and wanton misconduct and gross negligence.        Powell, J., in *Central of Ga. Ry. Co.* v. *Moore,* 5 *Ga. App.* 562 (63 S. E. 642), said:    "Wilfulness and wantonness are so far the opposites of negligence as to make the expression 'wilful and wanton negligence' misleading, though it is frequently employed by many of our best jurists and lawwriters."    The rules incident to wilful and wanton conduct are not applicable in a case unless the conduct of the defendant evinces "wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences, where human life or limb was involved, as to justify the jury in finding a wantonness equivalent in spirit to actual intent."    Jenkins, P. J., in *Buffington* v. *Atlanta, Birmingham & Coast R. Co.,* 47 *Ga. App.* 85 (169 S. E. 756), said: "Since the words 'negligence' and 'wilfulness' are incompatible, and a cause of action sounding in ordinary negligence is one thing, and one sounding in wilful misconduct is another, a plaintiff, in a single count, must proceed upon one theory or the other, and can not, in the absence of a statute permitting it, allege in such count both simple negligence and wilful misconduct."    "Many authorities regard gross negligence as the equivalent of wilful and wanton negligence, although in this State it is not so accounted, unless the evidence indicates 'that entire absence of care which would raise the presumption of conscious indifference,' or that, with reckless in-

difference, the person acted with actual or imputed knowledge that the inevitable or probable consequence of his conduct would be to inflict injury. *So. Ry. Co.* v. *Davis,* 132 *Ga.* 812 (65 S. E. 131) ; *So. Ry. Co.* v. *O'Bryan,* 119 *Ga.* 147 (45 S. E. 1000)." *Harris* v. *Reid,* 30 *Ga. App.* 187 (117 S. E. 256).

We come, therefore, to the proposition that unless the acts as pleaded in the present petition, although they are charged as being wilful and wanton and in utter disregard of the rights of others, are such as would sustain this conclusion, they are insufficient in law as a basis for a cause of action under the statute pleaded, and the general demurrer should have been sustained and the case dismissed. See, in this connection, *Western Union Telegraph Co.* v. *Harris,* 6 *Ga. App.* 260 (64 S. E. 1123) ; *Smith* v. *Hodges,* 44 *Ga. App.* 320 (161 S. E. 284), and cases cited.

Let us now consider the allegations of the petition and determine whether the facts alleged constitute, under the construction of the statute as announced above, wanton misconduct, evincing a reckless indifference to consequences to life, limb, or property of another. Are the acts alleged more than negligence, more than gross negligence? Is the allegation of the petition with respect to the speed of the car an allegation of such a fact as constitutes wilful misconduct, and in that sense more than gross negligence? In the case of Anderson *v.* Colucci, 116 Conn. 67 (163 Atl. 610), it was said: "The plaintiff had the legal status of a guest, and it was incumbent upon him to establish, prima facie, that the defendant in one of the ways alleged acted with heedless and reckless disregard of the rights of others." It was held that the fact that the defendant was driving at a "terrific" speed did not justify an inference that he was indifferent to the consequences which might result to his passengers from his conduct, or that he was guilty of wanton or wilful misconduct. In other words, the driving of an automobile in excess of a legal rate of speed, while it may be negligence per se, does not of itself constitute wilful and wanton misconduct such as would permit, under the statute here under consideration, a recovery for an injury proximately caused by such speed. Ascher *v.* Friedman, supra.

It is also alleged that the defendant, with knowledge that the steering apparatus on his car was in a defective condition, drove the car without having it inspected and repaired. It may be said

that there is no duty on the part of the owner to inspect the mechanical condition of his car before inviting a guest to ride therein. The guest takes the car as he finds it. This is a universal rule. It is alleged, however, that the defendant knew of the alleged defective condition of the car and continued its operation in spite thereof. To constitute conduct that is in reckless disregard of the rights of others, more than knowledge that a car is defective in its steering apparatus must be pleaded and shown. The alleged defect must, under such circumstances, be a dangerous defect, such as would constitute its further operation a menace to those who attempted to ride therein. When the defendant himself operates the car as alleged in the present case, it can hardly be said that such operation as to his guest was wilful and wanton and in reckless disregard of the rights of his guests. In the case of O'Shea v. Lavoy, 175 Wis. 456 (185 N. W. 525, 20 A. L. R. 1008), it was said: "In this case the defendant considered the automobile to be in sufficient condition to make the trip. This is evidenced by the fact that he not only intrusted his own safety thereto, but that of his wife and children as well. There can be no stronger evidence of the belief of the ordinary well-meaning man in the sufficiency of the car to safely make the trip." The guest took the car as he found it, was attended by no greater risk than that assumed by his host, and enjoyed the same security. See, in this connection, Fleming v. Thorton, (Iowa) 251 N. W. 158; Lewellyn v. Shott, 109 W. Va. 379 (155 S. E. 115). In Marple v. Haddad, 103 W. Va. 508 (138 S. E. 113, 61 A. L. R. 1248), it was said: "One who is carried gratuitously in an automobile, and at his own request, takes the machine as he finds it, subject to the duty of the operator to warn such licensee of any known dangerous defect."

As already pointed out, in order for the guest to recover in this case, it is necessary that he show that the conduct of the owner and operator was wanton and wilful. The fact that the car "had a tendency to swerve to the right" does not of itself make such a dangerous condition as to make the operation thereof by the owner wanton and wilful misconduct toward a gratuitous guest. See, in this connection, Moffatt v. Kenney, 174 Mass. 311 (54 N. E. 850); Rindge v. Holbrook, supra. The conditions as imposed by this statute are somewhat analogous to the rule fixed in this State in reference to gratuitous passes on railroads, where it is

provided in the contract that "the person accepting and using the pass thereby assumes all risks of accident to person or property." In such a case the railroad company is not liable for injury done to such person by negligence, although gross. The company can not be held liable in such a case unless the injury was inflicted wilfully and wantonly. *Lanier* v. *Bugg*, 32 *Ga. App.* 294 (123 S. E. 145), and citations. In that case it was shown that a train running forty to forty-five miles per hour had an old crack or break in one of the wheels, about four inches long, and that when the car was derailed because of rotten ties insecurely fastened to the rails, said wheel was caused to be crushed when it struck the ties. Such a condition, without more, did not show that the decedent's death was the result of wilful and wanton misconduct on the part of the defendant company. Without quoting further from cases involving wilful and wanton misconduct, we are of the opinion, from what has already been said, that the facts alleged in the petition fail to make out a case under the statute relied upon, and that it was error for the trial court to overrule the demurrers interposed.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*