DELIA GALLEGHER *v.* ALBA WATTS DAVIS and HERBERT F. LAW.

(*January* 13, 1936.)·

LAYTON, C. J., HARRINGTON and RODNEY, J. J., sitting.

*W. Thomas Knowles* for plaintiff.

*William Prickett* for defendant, Law.

Superior Court for New Castle County, No. 26, May Term, 1935.

LAYTON, C. J., delivering the opinion of the Court:

The allegations of damage are insufficient within the rules of pleading announced by this Court in *Bullitt v. Delaware Bus Co.*, 7 *W. W. Harr.* (37 *Del.*) 62, 180 *A.* 519. The special demurrer is sustained.

The questions raised by the general demurrer demand consideration.

The "Guest Statute" was enacted to replace a prior statute, *Chapter* 270, *Vol.* 36, *Laws of Delaware,* which relieved from any liability the owner or operator of an automobile for injuries suffered by a person while riding free of charge with the owner or operator. This statute was held to be unconstitutional in *Coleman v. Rhodes,* 5

*W. W. Harr.* (35 *Del.*) 120, 159 *A.* 649, for the reason that it denied a right of action to a guest in an automobile in all circumstances of injury, whether arising from ordinary or gross negligence on the part of the owner or operator.

The saving provision of the present act reads, "unless such accidents shall have been intentional on the part of such owner or operator or caused by his willful or wanton disregard of the rights of others."

██ We are not concerned here with "intentional accident," which we assume to mean a happening or event purposely brought about, for, accurately speaking, there is no such thing as an intentional accident. But, the history and language of the act indicates sufficiently the legislative belief that the multitudinous actions brought by guest passengers in automobiles against owners and operators, not infrequently the parties, plaintiff and defendant, being near relatives, presented so many instances of collusion, utter indifference to results because of protective insurance, perjury and consequent fraud upon the courts, as to constitute a serious public evil to be mitigated by defining the degree of care to be required of an automobile host to a guest.

██ ██ The word, "negligence," is nowhere used in the statute; and it is clear that negligence, as that term is properly understood in law, is eliminated as a basis of liability. *Silver v. Silver,* 108 *Conn.* 371, 143 *A.* 240, 65 *A. L. R.* 943; *Id.,* 280 *U. S.* 117, 50 *S. Ct.* 57, 74 *L. Ed.* 221, 65 *A. L. R.* 939; *Naudzius v. Lahr,* 253 *Mich.* 216, 234 *N. W.* 581, 74 *A. L. R.* 1189; *Walker v. Bacon,* 132 *Cal. App.* 625, 23 *P.* (2d) 520.

The distinguishing characteristic of negligence, is carelessness, thoughtlessness, inattention, inadvertence. Negligence is negative in its character and implies non-

feasance. Willful or wanton conduct is outside the domain of negligence, for the moment the element of wilfulness, actual or constructive enters, the conduct ceases to be negligent, and assumes the character of maliciousness or wickedness. Wilfulness and negligence are incompatible terms. Absence of intent is a characteristic of negligence. Wilfulness cannot exist without purpose or design. The difference is one of kind, not of degree. There is a clear distinction between wantonness and negligence, as the former term includes the elements of consciousness of one's conduct, realization of the probability of injury to another, and disregard of the consequences. Likewise, the precisian clearly distinguishes wilfulness from wantonness, in that the former includes the element of actual intent to cause injury, while, with respect to the latter, there is included, at most, an implied or constructive intent. But, wilful conduct or wanton conduct culminating in a happening and consequent injury, is more than negligent conduct, and where, as here, the statute defines the actionable quality of the conduct producing the event, as wilful or wanton disregard of the rights of others, it is clear that more than negligence is required as a basis of liability. See 20 *R. C. L.* 20; 45 *C. J.* 671-676; *Vessel v. Seaboard Air Line R. Co.,* 182 *Ala.* 589, 62 *So.* 180; *Johnson v. Duluth, W. & P. R. Co.,* 152 *Minn.* 151, 188 *N. W.* 221; *Lee v. Lott,* 50 *Ga. App.* 39, 177 *S. E.* 92; *Menzie v. Kalmonowitz,* 107 *Conn.* 197, 139 *A.* 698; *Stout v. Gallemore,* 138 *Kan.* 385, 26 *P.* (2*d*) 573; *Ceiken v. Goldman,* 5 *Cal. App.* (2*d*) 162, 42 *P.* (2*d*) 719; *Silver v. Silver, supra; Walker v. Bacon, supra; Naudzius v. Lahr, supra.*

The plaintiff contends that the declaration charges Law "with something more than negligence," and is, therefore, sufficient. That is to say, his driving the automobile at sixty miles an hour past the intersection, in the circum-

stances, constituted wilful or wanton disregard of the plaintiff's rights. By the statute, *Section* 83, *Motor Vehicle Code,* 36 *Del. Laws, c.* 10, as amended by 38 *Del. Laws, c.* 24, § 1, operating a motor vehicle on a public highway in excess of forty-five miles an hour for a distance of one quarter of a mile is *prima facie* evidence of a violation of the provisions of the act relating to speed. Such act may constitute negligence *per se,* but, of itself, does not constitute wilful or wanton disregard of the rights of the plaintiff, giving rise to an action under the statute, 45 *C. J.* 678; *Lee v. Lott, supra; Bobich v. Rogers,* 258 *Mich.* 343, 241 *N. W.* 854; *Sayre v. Malcom,* 139 *Kan.* 378, 31 *P.(2d)* 8; *Fly v. Swink,* 17 *Tenn. App.* 627, 69 *S. W.* (2d) 902; *Stanberry v. Johnson,* 218 *Iowa* 160, 254 *N. W.* 303.

Many operators of the modern, efficient motor vehicle find themselves driving at a speed of sixty miles an hour through inadvertence, with no consciousness that the act will naturally and probably result in injury, and certainly with no deliberate purpose not to discharge a known duty necessary to the safety of another.

The specific allegations of the declaration disclose no more than negligence. Epithetical language will not enlarge the allegations into wilful or wanton disregard of another's rights. *Price v.Gabel,* 162 *Wash.* 275, 298 *P.* 444; *Nichols v. Smith,* 136 *Cal. App.* 272, 28 *P.(2d)* 693; *Lee v. Lott, supra; Naudzius v. Lahr, supra; Sayre v. Malcom, supra; Townsend v. Minge,* 44 *Ga. App.* 453, 161 *S. E.* 661. See *O'Neil v. E. I. Du Pont de Nemours & Co.,* 12 *Del. Ch.* 76, 106 *A.* 50.

The plaintiff, further, contends that the declaration is sufficient for the reason that the statute is violative of *Section* 9, *Art.* 1 of the *Constitution.* The argument runs in this fashion: At common law, a guest passenger in an

automobile has a right of action against the operator for an injury received through negligence. *Coleman v. Rhodes, supra.* The statute eliminates negligence as a basis of recovery. The remedy by due course of law for injury to the person is denied, and perforce, the act is unconstitutional. Wherefore, the declaration, having stated a cause of action at common law, is sufficient.

In support of this contention two authorities are cited. In *Ludwig v. Johnson,* 243 *Ky.* 533, 49 *S. W.* (2d) 347, 351, the guest statute limited the right of action to injuries received from accidents resulting from intentional acts. The constitutional provision was substantially the same as our own; and it was held that the statute was violative of the *Constitution,* the court saying, "It was the manifest purpose of the framers of that instrument to preserve and perpetuate the common-law right of a citizen injured by the negligent act of another to sue to recover damages for his injury." Two judges dissented from this phase of the opinion.

In *Stewart v. Houk,* 127 *Or.* 589, 271 *P.* 998, 999, 61 *A. L. R.* 1236, on rehearing, 127 *Or.* 597, 272 *P.* 893, 61 *A. L. R.* 1240, the Guest Statute (*Laws Or.* 1927, *p.* 448) denied all right of recovery, and declared that,

"Acceptance of a free ride as a guest * * * shall be presumed to be a waiver * * * of liability for accidental injury."

There was before the court a constitutional provision similar to our own. It was held that the purpose of the provision was to "save from legislative abolishment those jural rights which had become well established prior to the enactment of our *Constitution.*"

On rehearing, *Silver v. Silver,* 108 *Conn.* 371, 143 *A.* 240, 65 *A. L. R.* 943, was called to the court's attention;

What effect the decision in this case had upon the Oregon Court is not clear. The court adhered to its decision, but made slight mention of the basis of its original conclusion, and laid stress upon the "unreasonable features" of the *Oregon Act,* operating, not as prescribing the duty of host to guest, but as a denial of all remedy "regardless of the degree of carelessness exhibited by the injuring act." As the Connecticut Court definitely said that conduct to be actionable was meant to be more than negligence, and as the Oregon Court, in its original opinion, with like definiteness, held that the act was unconstitutional in that it deprived a guest of redress in damages for injury negligently inflicted, there is room to surmise that the Oregon Court, to some extent, shifted its ground, and had it. been confronted with a statute similar to that of Connecticut, or our own, with the reasoning of the Connecticut Court before it, might not have given such a far reaching meaning and purpose to the constitutional provision, even though the provision in question was not before the Connecticut Court.

Courts disagree as to the precise purpose and meaning of the constitutional provision invoked. It has been said that such provision relates exclusively to the judicial department of government, 12 *C. J.* 1287; and such was the former opinion of the Kentucky courts, *Barkley v. Glover,* 4 *Metc. (Ky.)* 44; *Johnson v. Higgins,* 3 *Metc. (Ky.)* 566; but this view was held to be unsound in *Ludwig v. Johnson, supra.*

In *Allen v. Pioneer Press Co.,* 40 *Minn.* 117, 41 *N. W.* 936, 3 *L. R. A.* 532, 12 *Am. St. Rep.* 707, the provision was said to be but declaratory of general fundamental principles, founded in natural right and justice, leaving to the legislature a wide range of judgment and discretion; that the declaration of general principles was not so certain as to form rules for judicial decisions in all cases, but up to a certain point must be treated as guides to legislative judg-

ment, rather than absolute limitations of their power; and that in determining whether a statute is violative of the provision, it ought to be tested by the principles of natural justice, rather than by comparison with the rules of law, statute or common, previously in force.

The Kentucky view has the merit of certainty. According to this view, a right of action for the protection of person or property recognized at common law cannot be abolished by the legislature, no matter how society's standards may shift. We think this is too strict a view. On the other hand, according to the Minnesota view, while safeguarding language is employed, the provision is regarded, to some degree, as advisory only and not an absolute limitation of the legislative power. Conceivably, this goes too far.

Generally, we think, the provision is inserted in Constitutions to secure the citizen against unreasonable and arbitrary deprivation of rights whether relating to life, liberty, property, or fundamental rights of action relating to person or property; and that it applies as well to the judicial branch of government, as to the legislative and executive branches. It embraces the principle of natural justice that in a free government every man should have an adequate legal remedy for injury done him by another.

The inquiry, in every case, must be directed to the nature of the right alleged to have been infringed upon. Undoubtedly, arbitrary and unreasonable abolishment of a right of action to redress injury to the essential rights of person or property is prohibited. Certainly, the legislature may not declare to be right that which is essentially wrong, nor say that which is a definite, substantial injury to fundamental rights to be no injury, nor abolish a remedy given by the common law to essential rights without affording another remedy substantially

adequate. But no one has a vested interest in any rule of the common law. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, within constitutional limits, may be changed at the will of the legislature. The great office of statutes is to remedy defects in the common law as they develop, and to adapt it to the change of time and circumstance. *Munn v. Illinois*, 94 *U. S.* 113, 24 *L. Ed.* 77; *Mackin v. Detroit-Timkin Axle Co.,* 187 *Mich.* 8, 153 *N. W.* 49. Negligence is merely the disregard of some duty imposed by law; and the nature and extent of the duty may be modified by legislation, with a corresponding change in the test of negligence, *New York Cent. R. Co. v. White*, 243 *U. S* 188, 37 *S. Ct.* 247, 61 *L. Ed.* 667, *L. R. A.* 1917*D*, 1, *Ann. Cas.* 1917*D*, 629, and, as said by the same court with respect to the *Fourteenth Amendment*, in *Silver v. Silver, supra*, when that case was before it (280 *U. S.* 117, 50 *S. Ct.* 57, 58, 74 *L. Ed.* 221, 65 *A. L. R.* 939),

"We need not * * * elaborate the rule that the *Constitution* does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object."

So, in *Jackson v. Rosenbaum Co.*, 263 *Pa.* 158, 106 *A.* 238, where the plaintiff sued for consequential damages resulting from a trespass upon his property by the defendant in erecting a party wall under the protection of a statute, the court said, with the precise constitutional provision before it, that the fundamental principles of the common law, while liable to expansion, are in essence unchangeable, but their applicability to given conditions necessarily varies according to changes wrought by usage or statutory enactment, so that what today is a trespass may by development of law not be so tomorrow; and, that it would not do to say, since, at one time, at common law,

the uninvited entry upon land to build a party wall would have been an actionable tort, that, at the present day, such an act has all the attributes of a common law trespass, except those expressly removed by the statute, for the contention ignores the fact that, under present conditions, the law viewed such an entry as constituting no wrongful act.

At common law a certain degree of care is required of an operator of an automobile both with respect to the public and to guest passengers. With regard to the public it may be accepted that the legislature may not abolish the common law right of action to recover damages for negligent injury without substituting another substantially adequate remedy, for such right of action is a fundamental and essential right founded in natural justice.

A guest passenger in an automobile stands in a different position. His situation is brought about by his voluntary act, under no compulsion of necessity. Natural justice admits of a different course of conduct on the part of the host to the guest without suggestion of infringement of the fundamental rights of the latter.

A social guest in the private house of another is entitled legally to the same care that the host takes of himself and the members of his family, and no more. 1 *Thompson, Neg.*, § 971. The difference between an invitation extended by a person to dine with him at his home and an invitation to ride with him in his automobile is difficult to perceive. *O'Shea v. Lavoy,* 175 *Wis.* 456, 185 *N. W.* 525, 20 *A. L. R.* 1008. The owner of an automobile, generally, is required only to provide his guest with the conveyance he provides for himself. *Gifford v. Dice,* 269 *Mich.* 293, 257 *N. W.* 830, 96 *A. L. R.* 1477; *Lee v. Lott, supra.*

The distinction between the duty imposed in the case

of gratuitous service and service for hire is observed in many fields of the law. *Silver v. Silver, supra.*

 The police power of the state, speaking broadly, comprehends the whole system of internal regulation. Under it the state seeks, not only to preserve public order, but also to establish between members of society standards of good manners and neighborliness which tend to prevent a conflict of rights. The power extends to such restraints and regulations as are reasonable and proper to protect the lives, health, comfort, and ·property of citizens, and to promote the order, morals, safety and welfare of society. *Van Winkle v. State, 4 Boyce* (27 *Del.*) 578, 91 *A.* 385, *Ann. Cas.* 1916D, 104. Exact definition is impossible; there are limitations to the power and the significance to be given to the broad, general language of attempted definitions, is to be gathered from the facts of the particular case. *Mayor, etc., of Wilmington v. Turk,* 14 *Del. Ch.* 392, 129 *A.* 512. The power is always subject to express or implied constitutional prohibitions; but where not so restrained, the exercise of the power depends upon whether the situation presents a reasonable necessity for the protection of the public welfare, and whether the means adopted bear a reasonable relation to the end sought to be accomplished. Within these limits, the court will not assume to disturb the legislative action. *State v. Grier, 4 Boyce* 322, 88 *A.* 579. With the policy or wisdom of the act we have no concern. *State v. Allmond, 2 Houst.* 612.

 In the early days of the motor vehicle as a means of transportation, the public was content with the rule of the common law as it applied to a guest in an automobile. For the reasons heretofore pointed out the legislature resolved to change the public policy, not by denying all remedy, but by declaring, in effect, that certain conduct said by the common law to be tortious is so no longer. It

eliminated negligence as a basis of liability. It declined to attempt to classify negligence into degrees, for there are no degrees of negligence. Many years ago, Chancellor Saulsbury, speaking for the Court of Errors and Appeals, in *Diamond State Iron Co. v. Giles,* 7 *Houst.* 557, 11 *A.* 189, 193, said,

"Negligence is sometimes classified as gross negligence, ordinary negligence, and slight negligence; but this classification only indicates that, under the special circumstances, great care and caution are required, or only ordinary care, or only slight care. If the care demanded is not exercised, the case is one of negligence, and a legal liability is made out when the failure is shown."

This language has been incorporated in the text of eminent commentators. 1 *Thomp. Neg.,* § 18; 2 *Cooley, Torts* (3d Ed.) 1325. When, therefore, it is contended, as does the plaintiff, that the legislature may not adjust, or regulate, the duty as between operator and guest "beyond gross negligence," a classification of negligence is attempted which has no basis in the law of this state.

We cannot say that existing conditions did not present a manifest evil affecting the general welfare and public morals necessitating the imposition of a degree of restraint upon a certain class of suitors, nor can we say that the means adopted by the legislature do not bear a reasonable relation to the end sought to be accomplished.

The provision of the *Constitution* does not, either expressly or by necessary implication, forbid the legislature to measure the degree of care to be accorded by an owner or operator of an automobile to a gratuitous passenger; for it does not constitute the common law a straight jacket about the legislative body rendering it powerless reasonably to regulate social relations in accordance with changing conditions.

The statute is a proper exercise of police power of the state, and, accordingly, the general demurrer is sustained.