**Amy Dale AASTAD, by her guardian ad litem, Andreas Aastad, et al., Plaintiffs,**

**v.**

**Esther D. RIEGEL et al., Defendants.**

Superior Court of Delaware, New Castle.

Feb. 4, 1970.

F. Alton Tybout, of Tybout & Redfearn, Wilmington, for plaintiffs.

William F. Taylor, of Young, Conaway, Stargatt & Taylor, Wilmington, for defendants.

STIFTEL, President Judge.

Amy Dale Aastad (plaintiff),[1] a minor, was a passenger in a pick-up truck driven by Esther D. Riegel (a defendant),[2] also a minor, on the night of April 15, 1968. The pick-up truck was involved in an accident that night on curvy Alapocas Drive, northwest of Wilmington, New Castle County, Delaware. The accident happened after defendant driver increased the speed of her mother's truck to a speed 120% above the twenty-five mile speed limit and lost control of the vehicle; whereupon, it left the road, struck an abutment and then overturned. Plaintiff was injured and sued for these injuries and her pain and suffering. Her action was tried before a jury and a verdict was returned for her in the amounts of $90,000 as compensatory damages and $60,000 as punitive damages. The defendants moved for a new trial claiming that an instruction on "wilful disregard" was erroneous and prejudicial and that in any event the amounts were excessive.

*Wilful Disregard*

This matter was filed under the Delaware Guest Statute, 21 Del.C. § 6101, which requires a plaintiff to show that the accident in which he or she was injured "was intentional on the part of such owner or operator, or was caused by his wilful or wanton disregard of the rights of others."

The jury was instructed on both "wilful disregard" and "wanton disregard". Defendants challenge the instruction on "wilful disregard" and claim there was no evidence to warrant its use by the court in this case. Defendants do not challenge the court's instruction on "wanton disregard".

The jury instruction in question read:

"By the language of part of this statute, the liability of defendants may be based either on wilful disregard or wanton disregard of the rights of others by the defendant. Wilful disregard of the rights of others indicates an intent, or conscious decision, to disregard the rights of others. The concept of wilfulness is not a difficult one. 'Wantonness' requires more of an explanation."

Defendants rely on language in Gallegher v. Davis, 7 W.W.Harr. 380, 183 A. 620 (Super.Ct.) and restated in part in Law v. Gallegher, 39 Del. 189, 197 A. 479 (Sup.Ct.). They say that Law v. Gallegher distinguished "wilful" from "wanton" on page 482:

" * * * in strictly accurate use the terms 'wilful' and 'wanton' are clearly distinguishable, in that wilfulness includes the element of actual intent to inflict injury, while in wantonness there is an implied or constructive intent."

In Wagner v. Shanks, Del., 194 A.2d 701, the Supreme Court struck down the trial court's instruction which defined "wanton disregard" as consisting of an implied or constructive intent to cause injury, and, in so doing, overruled Gallegher v. Davis, *supra*. Our Supreme Court approved other language in Law v. Gallegher which defined wantonness to mean:

" * * * a conscious indifference to consequences in circumstances where probability of harm to another within the circumference of the conduct is reasonably apparent, although harm to such other is not intended."

[1]. Amy Aastad's father recovered $3,792.40 for her medical expenses and this amount is not questioned in this motion. Even though her father remains as her guardian ad litem, nevertheless, Amy is actually the only plaintiff left in the case.

[2]. Esther Riegel's mother, Edith Pearson, is also a defendant because Esther was a minor under the age of 18 at the time of the accident and by virtue of 21 Del.C. § 6105 is liable if her daughter is liable.

Thus, *Wagner* adopts the definition of "wantonness" as "a conscious indifference". The instruction given defines "wilful disregard" as a "conscious decision" to disregard the rights of others.

Where "wantonness" is a conscious indifference to consequences, "wilfulness" is a conscious determination to ignore consequences "in circumstances where probability of harm to another within the circumference of the conduct is reasonably apparent * * *". *Wagner* decided that implied or constructive intent is not an element of wantonness. Likewise, "actual intent" to do injury is not an element of "wilful disregard". Liability for an "intentional" accident [3] is already taken care of in Sec. 6101(a). I see no error in the language of the instruction as given.

Was there sufficient evidence in the record to support its use? I find there was. This young defendant ignored the instructions of her mother and drove a top-heavy pick-up truck in the nighttime on a narrow and curvy road, with which she was familiar, and which was barred to truck travel, at a speed substantially greater than that permitted for automobiles, and with some indication of protest from a passenger about her driving. She did not take the witness stand but in her deposition, which was read into evidence, she stated at page 21:

"Q. You knew about the fact that there were a number of curves in the road, five or seven is that correct?

A. I didn't know it until afterwards. I knew there were a whole series of curves.

Q. Had you heard before the time of the accident that there is some sort of competition or sport involved in getting through that section of the road as quickly as possible?

A. I heard of it.

Q. You heard of it before the accident?

A. Yes.

Q. Am I correct in understanding from what you say that you did realize or did know that there was a substantial increased chance of an accident as a result of the increase in speed?

A. Yes.

Q. But that you decided to do it anyway, or you did it anyway?

A. I just did it. I did not decide to do it, I just did it, I had no reason for it."

Even though the defendant driver stated she did not decide to increase her speed, nevertheless, a conscious decision to disregard the rights of others may be inferred from the total circumstances, from the testimony recited and other testimony in the record. I find no error in submitting the issue of "wilful disregard" to the jury.

I next consider defendants' motion for a new trial on the ground that the verdict was excessive. The plaintiff was awarded $90,000 as compensatory damages and $60,000 for punitive damages. Defendants contend these are excessive in view of the injuries suffered by the plantiff, as a matter of law.

### *Compensatory Damages*

This court has the power to set aside a jury verdict that is clearly excessive. Burns v. Delaware Coca-Cola Bottling Company, Del.Super. 224 A.2d 255; Lacey v. Beck, 2 Storey 526, 161 A.2d 579; Larrimore v. Homeopathic Hospital Association of Delaware, 4 Storey 449, 181 A. 2d 573, and decision below in 4 Storey

---

**3.** § 6101 uses the word "accident" with the word "intentional". Accurately speaking, there is no such thing as an intentional accident. In Gallegher v.

Davis, the Chief Justice described the word "accident" as used with "intentional" to mean a "happening or event purposely brought about" (183 A. at 622).

235, 176 A.2d 362. However, the trial court should extend the fullest consideration possible to the amount returned by the jury. See Conklin v. Schillinger, 255 Md. 50, 257 A.2d 187, 197. The $90,000 award is substantial. The question is whether the judicial conscience is so shocked and disturbed by the amount of the verdict that a new trial is required to rectify a patent injustice.

Plaintiff suffered substantial injuries. She had a fractured dislocation of the fifth dorsal vertebra at the juncture of the sixth dorsal vertebra. The neurosurgeon explained that it was a "compression fracture in which impacting forces actually crushed the bone and impacted into itself". Fusion was required to stabilize the fracture. This surgical procedure required pieces of bone from the hip to pack around the impacted backbone. The result is a deformity of the back which causes the backbone to diverge at a 15 degree angle away from the normal line of the back. The orthopedic surgeon explained that plaintiff's mobility has decreased and that her future activities must be circumscribed. Also, an increasing danger of developing arthritis remains.

Plaintiff developed a phlebitis condition. The problem started above the pelvic region in the veins in the lower abdomen and moved into the groin area. The internist stated that the symptoms indicated a more serious form of thrombophlebitis and that the blood clots under these circumstances frequently break off and can go to the lungs, creating a serious condition. As a result of this condition, plaintiff suffered permanent loss or destruction of veins in her leg and other circulatory problems. One prominent effect of this condition is that she now has at least a one inch enlargement of the left leg at the thigh compared to the right leg. Because she is prone to blood clotting in the future, plaintiff is barred from ever taking any of the present type of birth control pills.

Plaintiff is now a very young college student. At the time of the accident, she was in high school. Her life expectancy is 58½ years. She has been warned by her doctors against participating in vigorous sports; energetic dancing is forbidden; selected use of bathing apparel may be required for the beach because of back and hip scars. The limitations on her future are omnipresent. Any unusual pressure on her back could be catastrophic. A pregnancy that causes pressure on her spine could be both painful and dangerous. There always remains the possibility of spinal cord disintegration and even paralysis because of her injuries.

The amount of compensatory damages awarded to this young lady, whose future has been radically affected, is not excessive and does not disturb the conscience of this court.

*Punitive Damages*

■ Finally, defendants claim that the punitive damages of $60,000 was excessive and the result of passion and prejudice.

In Delaware, punitive or exemplary damages are allowed not by way of recompense to an injured plaintiff, but as punishment to the tortfeasor when her act was committed wilfully or wantonly. Reynolds v. Willis, 209 A.2d 760 (Del.Sup.Ct.); Farrow v. Hoffecker, 7 Penn. 223, 79 A. 920. The generally accepted rule is that an award for punitive damages may not be disproportionate in amount to the award for compensatory damages. Reynolds v. Willis, *supra,* 209 A.2d at p. 764. There is no set rule or ratio between the amount of compensatory damages and punitive damages that can be laid down. The amount of such damages must depend upon the facts of each particular case. See, e. g., Cain v. Fontana, 423 S.W.2d 134 (Tex. Civ.App.); Ostertag v. La Mont, 9 Utah 2d 130, 339 P.2d 1022; Kelite Products, Inc. v. Binzel, 224 F.2d 131 (5th Cir.) (applying Alabama law); Hutchinson v. Lott, 110 So.2d 442 (Fla.App.).

The amount awarded herein by the jury is not disproportionate to the award for compensatory damages. It is high, but not excessively so in view of the actions of the defendant driver and the resulting injuries to the plaintiff. I must let the verdict stand as rendered.

Defendants' motion for new trial denied.

It is so ordered.