SPARROW, EXECUTOR, ET AL. *v.* LEVINE, ADMINISTRATOR.

*Negligence—Exercise of care by automobile driver toward invited guest—Measure of damages—Wrongful death of unmarried son supporting parents and family.*

1. The owner or operator of an automobile owes to an invited guest the duty to exercise reasonable care in the operation of the automobile and not to unreasonably expose him to danger and injury.

2. A verdict for $20,000 in an action for wrongful death will be held to be excessive where the decedent at the time of his death was a single man thirty-four years of age living away from home and contributing largely to the support of his father, mother and three sisters, the mother being an invalid and cared for by the youngest sister, another sister twenty years of age earning $15 per week toward the family's support, the third sister married, but temporarily at home, and the father's income from his business being uncertain and not clearly shown, it being speculative as to

[1] Motor Vehicles, 28 Cyc. p. 41 (Anno.); [2] Death, 17 C. J. § 235.

how long the decedent would have continued to contribute largely to the support of the family.

(Decided May 7, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Galvin & Galvin; Messrs. Freiberg & Geoghegan; Mr. J. Paul Geoghegan; Messrs. Waite, Schindel & Bayless,* and *Mr. Herbert Shaffer,* for plaintiffs in error.

*Mr. Louis Rubenstein* and *Mr. James G. Stewart,* for defendant in error.

HAMILTON, J. The defendant in error, Meyer L. Levine, as administrator of the estate of Harry Levine, deceased, brought an action in the Superior Court of Cincinnati against the plaintiffs in error jointly for the wrongful death of Harry Levine, claimed to have been caused by the joint negligence of the Baltimore & Ohio Railroad Company and Nettie K. Lent, deceased.

The claim grows out of an accident at the crossing of the Baltimore & Ohio Railroad Company over Skillman road, at a point about one mile south of Glendale, Ohio, the tracks running in a northerly and southerly direction.

It appears that on March 30, 1921, Nettie K. Lent, who resided on West Seventh street in the city of Cincinnati, invited Alex Wagner and Harry Levine, deceased, who were roomers in her apartment, to take a ride in an automobile owned and driven by her. While riding in the automobile along Skillman road, Wagner on the front seat with Mrs. Lent, and Levine on the rear seat, they approached the crossing, which is an ordinary one

at grade. Adjacent to the east side of the railroad, and immediately north of Skillman road, the fox farm of Arthur A. Shoemaker is located.

The automobile as it approached the railroad was traveling at a speed of ten to twelve miles per hour, and could be stopped within a distance of ten to twelve feet. The train of the Baltimore & Ohio Railroad was traveling at a high rate of speed, estimated at fifty to sixty-five miles an hour.

As the automobile approached the crossing, Levine, seated on the back seat, called attention to the fact that they were approaching a railroad. Wagner, seated on the front seat with the owner and driver, Mrs. Lent, noted a train 150 feet above the crossing, and exclaimed to Mrs. Lent to speed the car, that the train was coming, realizing, as he states, that if the automobile stopped it would be immediately on the track. Wagner leaped over the door, struck on the rail of the track, and rolled out of danger. The train crashed into the automobile, destroying it, and causing the death of Harry Levine and of Mrs. Lent, the owner and driver.

The acts of negligence alleged were:

The running of the train at a reckless and dangerous rate of speed, beyond control, and without giving any signal for the crossing by the blowing of any whistle, or ringing of any bell, or otherwise, and that the railroad company failed to have any gates or barriers at the crossing to give warning to travelers, and failed to have any watchman at the crossing.

The petition further alleged that the deceased, Nettie K. Lent, was negligent in that she drove

the automobile at an excessive speed over and upon said railroad tracks, and failed to stop, look and listen for the approach of the train, and drove so closely in front of the same that it was impossible to avoid a collision; that through such carelessness and negligence the collision occurred; and that by reason of the negligence of both and each of the defendants plaintiff's intestate, Harry Levine, was killed. The prayer of the petition was for judgment against both of the defendants, plaintiffs in error here.

The trial of the case resulted in a joint and several verdict in favor of the administrator of Harry Levine in the sum of $20,000.

A motion for a new trial was overruled, and judgment entered for the amount of the verdict. From that judgment both defendants prosecute error to this court seeking a reversal, urging the following grounds of error:

That the judgment and verdict are against the weight of the evidence as to them and each of them.

That the court erred in giving certain special charges requested by the plaintiff below.

That the court erred in refusing to give certain special charges requested by the codefendants.

Error in the general charge.

Both coplaintiffs in error urge strongly that the verdict is excessive, was given under the influence of passion and prejudice, and was contrary to the weight of the evidence.

An extended argument is presented in the brief of counsel for the executor of the estate of Nettie K. Lent on the degree of negligence required to

be proven before liability for damage would accrue to the administrator of Harry Levine against the estate of the host, Nettie K. Lent. It is urged that the host must be guilty of gross negligence before liability will attach in favor of the invited guest. This question will be discussed later.

If Nettie K. Lent was liable only for failure to exercise ordinary care to her guest, the question as to the weight of the evidence is much simplified.

We are of opinion that the evidence establishes concurrent negligence on the part of the codefendants below sufficient to justify the jury in returning a verdict against them. Certainly, as to negligence, the verdict and judgment are not manifestly against the evidence. Wagner testified that Levine, on their approach to the railroad, at some 200 or more feet away, called attention to the fact that they were approaching the railroad.

Shoemaker, the owner of the fox farm, located as hereinbefore set forth, states that he was about 300 feet away, putting up a fence; that he saw the automobile approaching the railroad and heard the train coming down; that the train whistled for Oak street, about a half mile away; that he saw and heard the collision of the train with the machine. This was a disinterested witness, and from the record of his testimony he would appear to be a man of superior intelligence. We quote from his testimony, as reported in the record (page 59):

"Q. Do you remember hearing any signal given before that collision? A. Why the train was coming down and it blew at Oak street, and then again it blew and hit the machine and threw on the air brakes. I heard the collision.

"Q. How far away is Oak street from the Skillman crossing? A. Half a mile.

"Q. When was the next time it blew from the time it blew half a mile away, when was the next time it blew previous to the accident? A. Why it blew and then crashed into the machine.

"Q. How near together were those two things, the blowing and the crash? A. They were almost instantly.

"Q. You were in a position, as you say, to hear the crash? A. Yes, sir.

"Q. You were in a position to hear any whistle that was blown? A. Yes, sir.

"Q. And there was no whistle blown then between half a mile away and the very instant of the collision? A. No, sir."

Again with reference to the conduct of the driver of the automobile, Mrs. Lent, we have the testimony of Mr. Shoemaker. He testified as follows (page 62):

"Q. When the automobile passed along the road, what were the occupants doing, if anything? A. They were looking back at my foxes.

"Q. When did you first * * * when was your attention first attracted to any train? A. Why I heard the train coming down and the automobile * * * was looking back at the foxes so much and so long, I made the remark to Mr. Hamlin, I said—(Objection sustained).

"Q. Will you tell us how long you watched that automobile as it proceeded toward the railroad tracks? A. I saw that automobile until it got right on top of the railroad.

"Q. Until it got close to the tracks? A. Yes, sir.

"Q. Will you tell us how long, or where the automobile was when the occupants stopped looking back? A. Why, they was within about ten feet, or twelve feet of the track."

Wagner testified that he thought Mrs. Lent looked some two hundred feet before arriving at the crossing, but did not know whether she looked afterwards.

There are other items of testimony corroborating the facts testified to by Shoemaker. We are of opinion that these facts strongly support the charge of negligence, both on the part of the railroad company, in the failure to give the warning sound required by law, and on the part of Mrs. Lent in the failure to exercise care in looking for approaching trains. Had she looked properly she could have seen the train approaching. Had the train given the proper signal, she might have heard it and avoided the accident. The negligence of Mrs. Lent could not be imputed to Levine.

The verdict and judgment are not manifestly against the weight of the evidence, unless the liability of Mrs. Lent attached only in the case of gross negligence. Were this the rule, could it even then be said that under the testimony of Shoemaker she was not grossly negligent in approaching and crossing and failing to look?

Considering the question of the degree of negligence applicable where an injury results to a guest through the negligence of the owner and driver of a car, or a host, there seems to be some division of authority.

Cases are cited in the brief of counsel for the executor of the estate of Mrs. Lent, supporting the rule that where one is invited to ride gratui-

tously gross negligence must be proved to warrant a recovery for resultant injury. The case relied upon chiefly is that of *Massaletti* v. *Fitzroy*, 228 Mass., 487. In that case, the court at page 510, said:

"But justice requires that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing. It is a distinction which seventy-five years' practice in this Commonwealth has shown is not too indefinite a one to be drawn by the judge and acted upon by the jury."

The rule also seems to obtain in Maine and in Pennsylvania. The courts of Ohio have not differentiated as to the degree of care in an action for damages for a tort, except in cases of carriers for hire, where the highest degree of care is required. In all other actions for tort, the rule has always been the rule of ordinary care.

Indeed an examination of the authorities in Ohio leads to grave doubt as to whether there is any intelligible distinction existing between gross negligence and mere negligence. A careful discussion of this question is contained in the opinion in the case of *Telegraph Co.* v. *Griswold*, 37 Ohio St., 301. In the opinion the court cites the case of *Wilson* v. *Brett*, 11 Mees. & W., 113, to the effect that gross negligence is negligence "with a vituperative epithet." On page 312 of the opinion, after citing a long line of decisions to the effect that in the terms there is no sound distinction, the court observes:

"These authorities show a strong tendency in

the adjudications to break down the impractical distinction between what is termed gross negligence, and ordinary negligence, which some of the cases hold to exist.''

But whether or not there is a sound distinction between the terms negligence and gross negligence is not necessary to determine in this case.

In 20 A. L. R., 1014, the text lays down the general rule as to the care required of the operator of an automobile toward an invited guest, as follows:

''The rule is established by the weight of authority that the owner or operator of an automobile owes the duty to an invited guest to exercise reasonable care in its operation, and not unreasonably to expose him to danger and injury by increasing the hazard of travel.''

The other rule, as announced in the case of *Massaletti* v. *Fitzroy, supra*, is classified as a minority rule.

The text urges that to hold the driver or owner of an automobile liable for the absence of ordinary care would interfere with hospitality and recreation, in acts of kindness, consideration, etc., and cites language in support thereof from the case of *O'Shea* v. *Lavoy*, 175 Wis., 456. It seems to us that this argument ought not prevail. Can it be the law that when an invited guest accepts an invitation to ride, free of charge, the bars are down as to ordinary care for his safety? What justification can there be for exposing one to increased hazard for accepting an invitation to ride in an automobile? Moreover, the rule announced

in the case of *O'Shea* v. *Lavoy* was based on the case of *Thorogood* v. *Bryan,* 8 C. B., '115, which was disapproved in a scathing denunciation by our own Supreme Court in the case of *Toledo Rys. & Light Co.* v. *Mayers,* 93 Ohio St., 304, at 309.

We are unable to see why the owner or driver of an automobile should have more liberty to kill or injure his friend in his car, than he would have on the streets of the city, or in his home, or if his friend were an invitee under other circumstances. Is the automobile to be considered in this sense sacrosanct?

Our conclusion, based upon reason and the great weight of authority, is that the owner and driver should be held for failure to exercise ordinary care toward his guest.

Counsel for the executor of Mrs. Lent object to the charge of the court, wherein the court charged the jury that there was no statute or common law that restricts the rate of speed of railroad trains operating in the open country; also to the charge concerning the failure to maintain gates or a watchman.

It appears that the court charged the jury that the only question of negligence on the part of the railroad to be considered was whether the proper signals had been given. The railroad company could not complain of this. Neither do we see how any prejudice could result to the coplaintiff in error, in view of the conduct of Mrs. Lent, as testified to by Shoemaker.

The question of the contributory negligence of Levine is also raised. That question was prop-

erly submitted to the jury in the charge of the court as to Levine's conduct. The jury must have found that Levine was not guilty of contributory negligence, and was justified in so finding. It appears that Levine warned Mrs. Lent that they were approaching a railroad track. His conduct, under the circumstances, was a question for the jury. The case of *T. & O. C. Ry. Co.* v. *Fippin, Admr.,* 13 C. C. (N. S.), 125, which was affirmed by the Supreme Court, without report, 86 Ohio St., 334, is helpful on this proposition.

Other special charges requested and refused had within them instructions relative to the conduct of the invited guest. We do not incorporate in this already too lengthy opinion copies of these special charges requested. Suffice it to say that they contained statements to the effect that certain conduct on the part of Levine would preclude his recovery, undertaking to say what facts would constitute negligence.

In the case of *Board of Commrs. of Logan Co.* v. *Bicher, Admx.,* 98 Ohio St., 432, the court upheld the refusal to give similar charges, holding that it was the function of the jury to determine from the facts shown in each case whether the injured person used such care, and what care the circumstances required.

There was no error in the refusal to give the special charges requested, or in the giving of special charge "A" for plaintiff. Nor do we find any prejudicial error in the general charge.

The only remaining question is as to the amount of the judgment.

The action is under the statute and is brought for the benefit of those dependent upon the deceased. The amount of recovery must be based only upon the pecuniary injury resulting to them from the death of Levine.

The record shows that Levine, at the time of his death, was about thirty-four years of age; that he had contributed largely to the support of his father and mother and three sisters. At the time of his death his mother was an invalid. His father operated a second-hand clothing establishment, the returns from which were uncertain and not clearly shown. One sister was twenty years of age, and was employed at a salary of fifteen dollars a week. Another sister was married, and was at home, temporarily, and the third one, the youngest sister, was at home, engaged in looking after her invalid mother and the household duties. All jointly did their part in the family support to the extent indicated. The daughter working turned her wages of fifteen dollars a week toward the family support. How long the deceased might have continued to contribute largely to the support of the family under these circumstances is problematic and speculative. Had he established a home of his own, these parties claiming here would not be his dependents, entitled to recovery. He was not living at home, and to what extent they may be classed as dependents under the law is uncertain. His liability under the law for maintenance or support is only to the father and mother, and not to the adult sisters.

We are therefore of opinion that the verdict of

$20,000, while not indicating passion or prejudice, is not supported by the evidence, and should be reduced to $15,000. That this court has the authority to require a remittitur is established by the case of *Schendel* v. *Bradford, Admr.*, 106 Ohio St., 387.

We find no other prejudicial error in the record.

If the defendant in error will remit the sum of $5,000 from the judgment, the judgment will be affirmed. Otherwise, the judgment will be reversed, as against the weight of the evidence.

*Judgment accordingly.*

CUSHING and BUCHWALTER, JJ., concur.