## BROWNLEE v STANLEY

Ohio Appeals, 7th Dist, Mahoning Co

No 2503. Decided Oct 21, 1938

Barnum, Hammond, Stephens & Hoyt, Youngstown, for plaintiff-appellee.

Carlyle & Carlyle, Youngstown, for defendant-appellant.

## OPINION

By BENNETT, J.

In this action for wrongful death the plaintiff received a verdict and judgment for $3,500. The error alleged is that the verdict was against the weight of the evi-

dence and that it was excessive.

The defendant was driving his automobile west on United States Route 422 at dusk between 6:30 and 7:00 P. M. on September 25, 1936. The decedent was a farmer of seventy years of age and when struck was driving a team of unhitched horses across the highway. The defendant had been following immediately behind another car for some distance and just before the accident had decided to pass this other car. The decedent apparently did not see the defendant's car because hidden behind the other car, and the defendant did not see the decedent for the same reason. The decedent had correctly gauged his chance of getting across the road in front of the only car which he did see, but the defendant, driving on the extreme left hand side of the road, struck one of the horses and knocked it over onto Mr. Brownlee, who died a few days later. We cannot say that the jury was wrong in finding that defendant's negligence caused the death or in finding that the decedent was not guilty of any contributory negligence. In fact, it would appear reasonably certain that the jury's finding on both of these matters was correct.

The only ground of error which has been seriously argued to us has been the contention that the amount of the verdict was excessive, in the light of the claimed lack of evidence in the record as to pecuniary injury.

The statute (§10509-167 GC) reads:

"The jury may give such damages as it may think proportioned to the pecuniary injury resulting from such death to the persons, respectively, for whose benefit the action was brought.

"But how shall this pecuniary injury to the survivors be ascertained and measured by the jury? Manifestly it must be determined by the jury from the evidence in the case, and not merely by guess. Such facts should be established in the case by evidence as will enable the jury to fix the amount of the pecuniary loss to each person entitled to share in the recovery, and the jury should confine the verdict to the amount of loss so proven. To warrant a recovery at all it must be shown by evidence that in the usual course of events in life the beneficiary would have received financial aid from the deceased had he lived, and the approximate amount of such aid. This may be shown by evidence tending to prove that in the lifetime of the deceased he supplied aid, support or financial assistance to the beneficiary and would likely have continued to do so in the future had he lived. The relation of the deceased to the beneficiary may also be shown and his disposition and good will toward him as likely to result in gifts or inheritances, and to what end his age, health and ability to make and save money may be shown."

**Street Railway Company v Altemeier, 60 Oh St 10.**

See also in a similar field **Hanna v Stoll, 112 Oh St 344, 354.**

The decedent was a farmer, seventy years of age. He had had an illness from a bowel obstruction a year or so before his death. He spent five days in the hospital at that time and was laid up for a period of about six weeks. Except for this illness his health had been uniformly very good, and it was testified that he was able to do and did do hard work of various kinds, both on his own farm and for others, plowing, mowing, corn cutting, threshing, and silo filling, and in winter running a saw mill, at which he did the sawing, log turning and sometimes dragging in logs with a team. The testimony was that he did as hard work as a man many years younger and he put in more hours a day than the hired man would. He did not drink or use tobacco and was saving and thrifty.

He left two sons and a daughter, all three married for many years, and none of them had received any support from the father after marriage. One son, Ralph, lived on the farm and was paid wages by his father with which he supported his family.

He owned a farm of two hundred acres which was "practically" unincumbered, to use the word of the only witness on the subject. It was fully equipped with machinery and stocked with twenty-eight cows, five horses, fourteen hogs and fifty sheep and a number of chickens. The summer of the accident he had raised crops of hay, grain, etc. on the farm.

The only reference to dollars and cents in the record, however, is a statement by one witness that on occasion he had paid Mr. Brownlee $4.00 or $4.50 a day for working for him. There is no testimony as to the number of days he worked for others, or as to whether he was getting ahead or losing money either in the year before his death or in any other prior years. There is no testimony as to whether his farm represented his own accumulations or had been inherited. If it represented his earnings,

and if he knew something about its value, we would have some basis perhaps for determining the probable future accumulations.

The net result, therefore, is that there is really not a syllable of testimony in the record as to whether Mr. Brownlee's continued life would be of pecuniary benefit to his children or not. He had not supported them in any way for years. He had an expectancy of nine years. What he had when he died they got. Would this inheritance been more if he had lived out his expectancy?

We realize that the question of the amount of recovery in many, perhaps in most litigated death cases involves a great deal of guess work, but in this case, not only is the record completely silent on the matter of the value of the farm, of the source of the farm, of the gross or net income of the decedent, but it is a field in which almost certainly many facts about these matters were at the command of the plaintiff and the next of kin for whose pecuniary loss this case is being brought, and they did not see fit to go into it. Certainly, the value of the farm and Mr. Brownlee's net worth was known to his executor, the plaintiff, for it would be his duty to have had an appraisal made of the same.

We hold that the judgment is not sustained by sufficient evidence as to the amount of the verdict, that it was based on understandable human sympathy but not on evidence, and that the case should, therefore, be remanded for a new trial. It does not seem to us to involve any question of remittitur. We find no testimony to which we could apply any judgment to determine what would be a proper amount. It is not impossible that on retrial a larger verdict might be justified and obtained, but we do not find that the plaintiff in the present record has shown evidence from which the amount of the present verdict would be justified.

Reversed and remanded.

NICHOLS, PJ, and CARTER, J, concur.