### JACKSON, Admrx., Plaintiff-Appellee, v. CHESAPEAKE & OHIO RAILWAY COMPANY, Defendant-Appellant.

Ohio Appeals, Second District, Franklin County.

No. 4411. Decided February 15, 1951.

Vorys, Sater, Seymour & Pease, Richard Sater, Byron Ford, of Counsel, Columbus, for appellee.

Wilson & Rector, Richard Rector, of Counsel, Columbus, for appellant.

## OPINION

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment of the Common Pleas Court in favor of the plaintiff for $1875.00 with costs. The action for wrongful death of plaintiff's decedent was originally instituted against the defendant railway company and H. L. Young. Upon motion of the defendant, the plaintiff was required to elect, and elected to proceed against the defendant railway company.

The claim of the plaintiff was that on April 9, 1946, H. L. Young, an employee of the defendant corporation, acting within the scope of his employment, intentionally, maliciously and unlawful assaulted and shot plaintiff's decedent resulting in his death. The answer of the defendant, with the exception of the admissions of the qualification of plaintiff's administratrix, the corporate capacity of the defendant and that H. L. Young was employed by it as a railway detective, was a general denial.

The facts necessary to an appreciation of our question are that on the night of April 9, 1946, a passenger train of defendant company stopped at its station in Fostoria, Ohio. While the train was standing, plaintiff's decedent and a companion by the name of Baker knocked on the door of a Pullman car on the side opposite the station. They wore socks on their hands to serve, Baker says, the purpose of mittens.

A Pullman porter hearing the rap on the door opened it and the two young men boarded the car. They requested a place to hide in the dining car which was refused and thereupon moved into a Pullman car, entered the ladies' toilet and locked the door from within. Requests were made of the young men to come out of the closet which they refused. When the train was about to stop at Upper Sandusky, Jackson jumped out of a window of the toilet in the ladies' room. Baker unlocked the toilet door, ran through the Pullman car and left the train. The next station after Upper Sandusky at which the train stopped was Marion, Ohio. Awaiting the arrival of the train at Marion were officers Young and McBee, special policemen commissioned by the Governor of Ohio and employees of the railway company. Riding on the train was a special agent of the company by the name of Goodman who was the superior officer of Young and McBee. He and the conductor left the train and conferred with officers Young and McBee and related to them the full details of the acts of Jackson and Baker on the train. After the conference, the officers immediately left Marion and drove toward Upper Sandusky. When nearing Upper Sandusky they saw two men who proved to be Jackson and Baker and after driving past them, turned around, trained their headlights on them and stopped. Young, upon alighting, had with him a flashlight and a revolver. He approached the men, ordered them to stop, put up their hands and stated further, "We are police officers." Baker complied with the order. The testimony varies as to the actions of Jackson. Officer Young says that he continued to walk and that upon the second order did not stop but whirled in the road and put his hand back toward his hip pocket. Baker testifies that following the second order Jackson put up his left hand and almost immediately thereafter and before he could put up his right hand officer Young shot him and killed him. Neither young man was armed. Baker was taken to a jail in Upper Sandusky and the next day a charge of trespassing was placed against him. The evidence developed that both Jackson and Baker had Court records and at the time of the shooting Jackson was on parole from Mansfield. These facts were unknown to the officers and were admitted only as related to damages. It appeared that the young men had been to Flint, Michigan, secured a job there and at the time of the occurrences on the train, were returning home for the purpose of securing clothing and money. When they left Columbus, Baker had no money and Jackson had but $15 which he borrowed from his mother. There was evidence to the effect that Jackson was employed when he left for

Michigan and had regularly made contributions to his mother from his earnings, although the amount thereof was not fixed.

At the conclusion of plaintiff's case, defendant moved for a directed verdict which was overruled. Thereupon the cause was submitted to the jury upon the case as made by the plaintiff. Verdict was returned for the plaintiff and judgment entered upon the verdict, after the overruling of a motion for judgment notwithstanding the verdict. Motion for new trial was also filed and overruled.

Four errors are assigned:

(1) Error on the part of the Court in overruling defendant's motion for a directed verdict.

(2) Error in overruling defendant's motion for judgment notwithstanding the verdict.

(3) Error by the Court in refusing to give defendant's special charge that the acts of Jackson and Baker on the train of the defendant company constituted a felony and error by the Court in charging that any offense committed by Jackson and Baker on the train was a misdemeanor only and that special officer Young had no legal right to arrest them without a warrant.

(4) The verdict was not sustained by sufficient evidence, contrary to the evidence and the law.

The third assignment of error is so related to the other assignments that we first consider the two parts thereof, (a), (b). It is urged that the Court erred in refusing to charge that the acts of the young men in the ladies' room of the Pullman car of the defendant company in the handling of the lock on the door of the room constituted a felony as provided in §12560 GC. Appellee contends that this section has no application whatever, for two reasons, the first of which is that its subject matter does not apply to a lock on the inside door of a passenger coach. The second is that if it applies to such a lock, the young men committed no offense in what they did respecting the lock. If the statute is applicable the following language is pertinent:

"Whoever, without proper authority * * * disarranges or destroys a lock * * * on a * * * car, * * * or other property of such railroad, * * * shall be * * * imprisoned in the county jail not less than thirty days or in the penitentiary not more than ten years."

According to the testimony, one of the young men either held the lock from the inside so that it could not be unlocked or locked it from the inside. Did either act constitute a disarranging or destruction of the lock? We think not Certainly, it was not destroyed. Nor was it disarranged. There

is no evidence to the effect that at any time was the lock so handled that it would not perform the purpose for which it was made but for the application temporarily of outside force upon it. No part of the lock was broken nor its position changed. It was not thrown out of order. The lock at all times was in condition to function normally. What was done respecting it was not a disarrangement. The young men committed no felony and the trial judge was correct in refusing to so charge. It follows that the Court was also correct in charging that the act committed by the young men, trespassing, was a misdemeanor and that the special officers had no legal right to arrest them without a warrant.

The disposition which we make of the third assignment of error is largely determinative of the first and second assignments. Counsel both rely on the case of **New York, Chicago & St. Louis Railroad Company v. Fieback, 87 Oh St 254,** the appellant upon both syllabi and the appellee on the second syllabus particularly. We are of the opinion that the second syllabus affords support for the action of the trial judge in submitting the case to the jury upon the testimony on behalf of the plaintiff. It is insisted that the testimony of the plaintiff did not afford sufficient proof to carry the case to the jury upon the issue of the authority of officer Young from the company to make the arrest of Jackson. The special policeman, duly commissioned, had such powers to make an arrest as were delegated to him by the applicable provisions of the Code. The Fieback case holds that,

"A railroad company is not liable for the wrongful acts of such officer while acting by virtue of his office, unless such wrongful acts occurred in the performance of an act which was outside of the public duties of a policeman, and which was authorized or ratified by such company."

The trial judge charged that the acts of the officer will be presumed to have been done as a public officer pursuant to authority derived from his appointment, until that presumption is overcome by sufficient evidence. The jury having found, as it must have found, that the attempted arrest was made without a warrant for an offense which was a misdemeanor, the performance of that act was outside of the public duties of a policeman. There was then left the further question whether or not the arrest was authorized by the defendant company. This is the only question of substance in this record.

Without restating the conversation of Young and his fellow policemen with the conductor and the special agent of defendant company, Young's superior officer, on the platform at

Marion, we are satisfied to say that Judge Leach was correct in holding that under all the circumstances appearing there was a factual question for the jury whether or not the acts of Young at the time of the attempted arrest were authorized by an agent of the defendant company and, if so, whether or not the acts were unlawful and wrongful. Certainly, the authority from Young's superior officer was not by direct language and must be found, if at all, from the implication to be drawn from what was said at the time that the officers met on the platform at the station at Marion. We believe that the authorization to make the arrest may be implied.

The first and second assignments of error are not well made.

The fourth assignment of error goes to the weight of the evidence as well as its sufficiency and upon this claim there is, in view of our holding, but one question left, viz., whether the evidence supported a money judgment in any sum or to the amount of the verdict. The testimony of the mother of plaintiff's decedent was to the effect that he was employed as a janitor prior to the time that he went to Flint, Michigan, from where he was returning when he was shot; that every week he contributed to her support. The amount of his earnings or the amount of his contributions were not stated. In **Minglewood Coal & Ice Co. v. Carson, 31 Oh Ap 237,** it is held that,

"The law giving the right to recover damages for unlawful death, not providing any rule to determine the amount of damages recoverable, except that 'the jury may give such damages as it may think proportioned to the pecuniary injury resulting from such death,' the jury may use their own experience in the conduct of human affairs in arriving at the amount of their verdict based upon the facts established."

In the recent case of **Immel, Admr. v. Richards, 154 Oh St 52,** an appeal from this Court, **56 Abs 132,** the Supreme Court affirmed a judgment for the plaintiff for $5000.00 for the wrongful death of a nine months of age child. It was beyond the power of the plaintiff to show what, if any earning capacity the child would have or to what extent it would provide pecuniary assistance to its next of kin. In such cases, and in this case, there is nothing very definite upon which to predicate a verdict and a jury must draw upon its common experience of the probable money assistance which was taken from decedent's next of kin by reason of his death in the light of all the facts presented. The jury in this case did not evaluate the pecuniary loss to plaintiff's decedent's

next of kin very highly, probably about a dollar a week, because he was a young man, presumably, in good health, and with a long expectancy of life.

In a case such as this where the conduct of plaintiff's decedent leading up to the attempted arrest was clearly wrongful and aggravating in the extreme, there might be a tendency to say that his next of kin should not be protected by reason of his demise. On the other hand, one unlawful act does not justify the commission of another.

Upon the conclusions which the jury had the right to draw from the facts in this case the shooting of plaintiff's decedent was inexcusable, unlawful and willful. We find no error in the trial of the cause in any of the errors assigned which would require its reversal. The judgment will be affirmed.

WISEMAN and MILLER, JJ, concur.