Murray, Admr., Appellee, *v.* Long, Appellant.

(No. 541—Decided December 24, 1968.)

*Mr. O. Joseph Murray,* for appellee.
*Messrs. Janson, Smith, Davis & Bixler* and *Mr. William C. Ailes,* for appellant.

TROOP, J. O. Joseph Murray, as the administrator of the estate of Edwin Paul Rinehart, Jr., filed a wrongful death action in the Common Pleas Court of Ashland County, on behalf of the father of his decedent, Edwin Paul Rinehart, and the mother, Ruth C. Boulle, both of whom, it is alleged, sustained pecuniary injury by reason of decedent's death.

The bill of exceptions indicates that a companion case between the same parties was tried simultaneously with the wrongful death action, but this appeal is concerned solely with the latter case.

Trial was had to a jury, and a verdict of $25,000 favorable to the plaintiff was returned. The trial court considered defendant's motion for a new trial and overruled the motion conditioned upon the acceptance by the plaintiff of a remittitur of $12,500. After considerable delay and several extensions of time within which plaintiff was to accept, the plaintiff did accept, and judgment was entered accordingly. As shown by the notice of appeal filed by the defendant, this appeal is from the judgment for $25,000 entered April 8, 1968, and the final order overruling the motion for a new trial, July 24, 1968, on questions of law.

Defendant details the assignments of error upon which this appeal is predicated, but for purposes of this review the basic objections will be noted as follows: (1) The judgment is excessive and the verdict given under the influence of passion and prejudice; (2) the judgment and final order is not sustained by sufficient evidence and/or is against the manifest weight of the evidence. The other assignments of error are incidental to these major objections and will be mentioned as they relate.

As introductory to this review, reference is to the applicable portion of the wrongful death statute, Section

2125.02, Revised Code, upon which this action is predicated, as follows:

"An action for wrongful death must be brought in the name of the personal representative of the deceased person, but shall be for the exclusive benefit of the surviving spouse, the children, and other next of kin of the decedent. The jury may give such damages as it thinks proportioned to the pecuniary injury resulting from such death to the persons, respectively, for whose benefit the action was brought. * * * "

Section 2321.17 (D), Revised Code, is also noted. It authorizes the granting of a new trial by the trial court where the verdict appears to have been given under the influence of passion and prejudice.

In wrongful death actions brought for the benefit of those named in the statute, the damages recoverable shall be "proportioned to the pecuniary injury" resulting from the death. This basic limitation must be emphasized.

Attention is directed to possible "passion and prejudice" as having influenced the jury in the instant case. The trial court found the verdict of the jury "merely excessive" and not the result of passion and prejudice. Defendant, appellant herein, does not accept that conclusion, necessitating consideration of it here.

No more troublesome problem ever confronts a reviewing court than determining whether passion and prejudice influenced a jury. The question is ordinarily raised where there has been an "excessive" verdict or at least so claimed to be by a defendant. Text writers in 4 Ohio Jurisprudence 2d 508, Section 1157, suggest that there is no hard-and-fast rule by which the presence of passion and prejudice can be ascertained. The text also suggests, by way of assistance, several tests to be applied. Size of the verdict as compared to the amount of the remittitur is one element, but the writers hasten to add that the disparity may be grounds for a suspicion of passion and prejudice but it is in no sense conclusive. Other suggested factors which may induce excessive damages are the admission of incompetent evidence, misconduct of court or counsel, or

any other action or occurrence which may have swayed the jury.

A few typical cases bear upon the matter of passion and prejudice but offer no hard-and-fast rule by which to determine that presence. An early case, *Cleveland Ry. Co.* v. *Mueller* (1928), 31 Ohio App. 488, offers amplification of the foregoing text materials and in a sense disagrees with it. Attention is to the headnotes, as follows:

"4. Amount of verdict itself may determine question of passion or prejudice on part of jury, when there is no other reasonable explanation therefor.

"5. Passion or prejudice resulting in excessive verdict is not removed by *remittitur*, its existence bearing on question of fair and impartial trial.

"6. When trial court reaches conclusion that verdict in personal injury case is twice as large as it should be, case calls for closest scrutiny and consideration on subject of passion and prejudice of jury."

*Klotz* v. *Balmat* (1930), 34 Ohio App. 490, reveals a somewhat similar attitude on the part of the court in paragraph five of the headnotes, as follows:

"That court, of own motion, in personal injury case, entered *remittitur* of 60 per cent, indicated verdict was result of prejudice."

A Supreme Court case, *Chester Park Co.* v. *Schulte, Admr.* (1929), 120 Ohio St. 273, makes several pronouncements worthy of note and bearing on this case. The rules suggested cover the authority of courts to make a remittitur, the necessity of a new trial if passion and prejudice are found, and, most important to this case, the holding that where there are differences of opinion between court and jury as to the extent of pecuniary injury those differences do not necessarily indicate that the jury was influenced by passion and prejudice. (Page 292.) It is interesting to note that in *Chester Park* both the trial court and the Court of Appeals granted a remittitur.

*Larrissey, Admx.,* v. *Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207, also held that the amount of the verdict is not conclusive and that a trial court could find

that a verdict was not the result of passion and prejudice and still require a remittitur. (See paragraph five of the syllabus.) In the decision the court referred to its opinion in *Fromson & Davis Co.* v. *Reider, a Minor* (1934), 127, Ohio St. 564, which might be regarded as a classic case in this area. It also supports the tests suggested by text writers in 4 Ohio Jurisprudence 2d, *supra*. The syllabus rule we note is as follows:

"2. A remittitur amounting to fifty per cent. of the verdict does not furnish conclusive proof that excessive damages were 'given under the influence of passion or prejudice.' * * * "

An examination of the transcript indicates that this case was well tried by the trial court. There was no admission of incompetent evidence or misconduct of court or counsel. The disparity between the amount of the verdict and the remittitur is in no sense conclusive as to the presence of passion or prejudice. There is no basis upon which to conclude that the trial court erred in finding there was no passion or prejudice.

There remains to be considered the matter of the claim that the damages given were "excessive" and the verdict and judgment are not supported by evidence sufficient to show "pecuniary injury." The size of the verdict and supporting evidence are so closely related that they will be considered together. 4 Ohio Jurisprudence 2d 506, Section 1156, suggests the necessary approach of a reviewing court, as follows:

" * * * a judgment will not be reversed because the verdict is excessive in the mind of the reviewing court, unless that court is also convinced that the excess is due to the influence of passion or prejudice, * * *, or unless the verdict is so excessive as to strike one at first blush as unreasonable and outrageous, * * * or unless it appears that the amount of the verdict is supported by no evidence whatever, * * *, or, at least, that it is manifestly opposed to the clear weight of the evidence in the case. If there is any margin for a reasonable difference of opinion in the matter the judgment will be sustained."

General propositions of law, significant in the instant case, are provided by some of the available cases dealing with wrongful death actions. They cover a considerable span of time and relate to the nature of the action, proof required to show pecuniary injury, the kind and quality of evidence necessary and the limitations thereto. An early case, *Johnston Admr., v. Cleveland & Toledo Rd.* (1857), 7 Ohio St. 336, indicates the scope of wrongful death actions and emphasizes the necessity for proof of special circumstances, as follows:

"* * * for the benefit of the next of kin of the deceased, though he leave no widow or children, and though the petition do not contain a statement of special circumstances rendering the death a pecuniary injury to them. Such special circumstances can affect only the *amount* of the recovery."

Leniency characterized the court in an early case as to necessary supporting evidence. *Becker* v. *Howanyecz, Admx.* (1910), 18 C. C. (N. S.) 19, 32 C. D. 561, holds as follows:

"A verdict of $800 for the death of an infant two years old will not be set aside as excessive, even though there was no evidence introduced as to the probable length of life of the infant or as to what it would probably have contributed to the support of the beneficiaries of the judgment, if it had lived."

The holding in *Becker* is not in accordance with *Steel, Admr.,* v. *Kurtz* (1876), 28 Ohio St. 191, decided previously by the Supreme Court, which requires proofs of damages, the amount to be awarded to be determined by:

"3. * * * from the proofs in the case, and are to be a fair and just compensation * * * with reference to the *pecuniary injury* * * *."

The syllabus rule is also provided limiting the damages, as follows:

"4. In such action, the jury, in assessing the damages, are limited to giving pecuniary compensation for injuries resulting to the beneficiaries in the action on account of the death of the deceased. No damages can be giv-

en on account of the bereavement, mental suffering, or as a solace on account of such death."

*Greer, Admr.,* v. *Board of Commissioners of Knox County* (1927), 33 Ohio App. 539, is an unusual case because the verdict awarded only $1 in damages. The decision provides, however, the basic concepts of what is competent by way of evidence in the actions here considered. The court speaks, as follows:

"* * * beneficiaries received financial aid from deceased during his lifetime and that they would likely have continued to receive such aid had he lived, is competent; and, to show that such beneficiaries needed and would likely have received such aid, the circumstances, age, health, and means of support of beneficiary, if parent or next of kin of decedent, as well as age, health, disposition, and thrift of decedent, may be shown."

The court in *Karr, Admr.,* v. *Sixt* (1946), 146 Ohio St. 527, enlarges the concept of pecuniary injury, as follows in the sixth paragraph of the syllabus:

"* * * comprehends essentially injury measured by the prospective advantages of a pecuniary nature which have been cut off by the premature death of the person from whom they would have proceeded. * * * "

Finally, *Flory, Admr.,* v. *New York Central Rd. Co.* (1959), 170 Ohio St. 185, points out what must be considered as bearing upon pecuniary injury, as follows, at page 190:

"* * * chance of future support by the decedent of his mother and father, the age, sex and physical and mental condition of the decedent, and the position in life, occupation and physical condition of the parents * * *."

*Flory* is interesting because the decedent was an eighteen-and-one-half-year-old boy who worked with his father in a family enterprise jewelry store, assisting the father while learning the business.

Generalizations may be dangerous, but it appears that some facts must be specifically shown, *i. e.,* that the beneficiaries received financial aid from the decedent during his lifetime, that they would likely continue to receive that

aid, that the beneficiaries needed that aid, and/or that the beneficiaries would have in reasonable probability inherited from an accumulating estate program cut short by the death of the decedent.

Circumstances, age, health, and means of support of the beneficiaries, and age, health, disposition, and thrift of the decedent, bear upon the factors noted.

Fact patterns in the wrongful death cases in Ohio roughly classify into those involving infant children, those in which a widow and children are beneficiaries, and the miscellaneous group including those in which mother and father and other heirs are involved. With the realization that special facts determine the outcome of cases, and that time and economic levels bear upon the matter of an "excessive" amount, a few of the latter class of cases were reviewed with the hope that a principle or rule might emerge. They are all worthy of note.

An early case, *Ohio Traction Co.* v. *Flynn, Admrx.* (1916), 26 C. C. (N. S.) 250, 35 C. D. 118, involved a decedent, twenty-six years old, unmarried, who left a father and mother and two brothers and sisters. The decedent, the court said, was industrious, healthy, and thrifty, and contributed to the support of his parents. A $7,000 verdict was affirmed.

A Court of Appeals found a $20,000 verdict to be excessive and ordered a remittitur of $5,000 in *Sparrow, Exr.,* v. *Levine, Admr.* (1923), 19 Ohio App. 94. The court did not order the reduction because passion or prejudice was found to exist, but found that the verdict was not supported by the evidence. The decedent was unmarried and thirty-four years old. He left father and mother and three sisters. All the children helped support the family. The language of the court, at page 105, may not be entirely acceptable but should be noted in passing. It is as follows:

" * * * How long the deceased might have continued to contribute largely to the support of the family under these circumstances is problematic and speculative. Had he established a home of his own, these parties claiming here would not be his dependents entitled to recovery. He

was not living at home, and to what extent they may be classed as dependents under the law is uncertain. * * *''

In *Burns-Bowe Baking Co.* v. *Pakos* (1930), 9 Ohio Law Abs. 262, the court affirmed a $12,000 judgment, saying that it was supported by the fact that the son, deceased, paid, for the use of his father, $120 to $150 per month, which was more than the verdict computed on the basis of the father's life expectancy. The son also helped to furnish and maintain the home.

The reviewing court reversed and ordered a new trial in *Brownlee* v. *Stanley* (1938), 28 Ohio Law Abs. 119. The judgment was $3,500. A fact pattern the reverse of the one here considered characterized the case. A 70-year-old father was the decedent and married children his named beneficiaries. They had received no support from the father for years, and as to the future the court said:

''* * * no evidence as to whether or not his continued life would be of pecuniary value to his married children * * *.''

Noted also is the language of the court, at page 121, as follows:

''* * * the judgment is not sustained by sufficient evidence as to the amount of the verdict, that it was based on understandable human sympathy but not on evidence * * *.''

Finally, a case in which a mother was the beneficiary on behalf of whom the suit was brought. A verdict for $1,875 was affirmed in *Jackson, Admrx.,* v. *Chesapeake & Ohio Ry. Co.* (1951), 61 Ohio Law Abs. 223. The court found that the decedent, a son, contributed every week to the support of his mother. The amounts of earnings or contributions were not stated in the facts reported.

Generalization is difficult respecting the cases reviewed. There is, however, one common fact present in the cases. Where judgments were affirmed, the decedent contributed to mother, father, or family consistently and systematically, and the contributions continued up to the time of decedent's death. The courts noted also as important the probability of continuation of the contribution if death

had not occurred. Finally, evidence of the probability of the beneficiary inheriting from the estate of the decedent must be considered in measuring pecuniary injury.

Testimony contained in the transcript before this court for review needs scrutiny in view of the generalizations pointed out in the preceding paragraph. Tests to be applied relate to (1) the character of the contributions, if any, (2) the prospects for continuance, and (3) the probability of an inheritance from the estate of the decedent.

Decedent made no systematic and consistent contribution to the support of his father. The relationship between father and son was cordial. The son was kind to his father and took him to dinner occasionally or to a football game. There was no support provided at the time of the death of the son nor had there ever been. Mrs. Ruth Boulle, the mother of the decedent, made her home with the son from 1959 to 1963. After her divorce from Mr. Rinehart, Mrs. Boulle continued to work and live with a daughter until she sold her home and moved to Ashland to live with, and keep house for, her son. The mutually satisfactory arrangement between mother and son, which provided living accommodations for both, provided largely by the son, terminated upon the marriage of the mother to Mr. Boulle. At the time of decedent's death there was no contribution to the mother, consistent or systematic or otherwise.

There is no evidence in the transcript to indicate that the mother or father could reasonably anticipate contributions in the future, nor was there any evidence that either would need support money. The mother was supported by her husband and the father was working and supporting himself and his second wife. Mrs. Boulle's future was reasonably secure as evidenced by her own testimony concerning income and a place to stay for the balance of her life. Possible future contribution to either parent is rendered highly improbable by the possible marriage of the son, a possibility noted by the court in *Sparrow, supra.* There is evidence in the record of gifts to the mother and courtesies to the father. Gifts are by no means systematic and consistent contributions to support and

must not be so confused. In the instant case, the $300 and the rings given to the mother can be no more than gifts. The $300 might also have been reimbursement for the value of Mrs. Boulle's Pontiac which Paul traded on his Thunderbird at the time he purchased it.

That mother and father might inherit from the decedent is quite unlikely. There is no evidence that the decedent had an estate of any consequence or that he was in the process of accumulating one. The life expectancy of the parents, age sixty-four at the time of hearing, would make it a probability that the son would inherit from them rather than they from him.

The trial court was correct in finding that the verdict was not the result of passion and prejudice. It could well be said that it was based on understandable human sympathy. There is, however, no evidence to support the claim that the mother and father of the decedent suffered "pecuniary injury" in the instant case. If it be contended that there was some evidence of pecuniary injury, it cannot be said that it manifestly appeared by the clear weight of the evidence. In the instant case, the evidence presented does not even provide a margin for a difference of opinion. Such condition of the evidence supports reversal.

The judgment of the trial court is reversed, the appeal dismissed at appellant's costs, and the cause remanded with the direction that the trial court shall enter judgment in favor of the defendant.

*Judgment reversed.*

Van Nostran, P.J., concurs.

Rutherford, J., dissenting. The majority opinion has failed to note any distinction between a wrongful death action in which parents or children are beneficiaries and a wrongful death action in which the only beneficiaries are collateral heirs. For cases noting this distinction, see *Martin, Admx.,* v. *Pennsylvania Rd. Co.,* 55 Ohio App. 205, paragraph two of the syllabus which reads:

"There is no presumption of pecuniary loss in favor

of collateral heirs, resulting from the wrongful death of a child, as there is in the case of parents, since there is no legal obligation on a child to support collateral heirs, and the latter are not entitled to the earnings of such child."

Also, see *Karr, Admr.,* v. *Sixt,* 146 Ohio St. 527, paragraphs four and five of the syllabus:

"Under Section 10509-167, General Code, providing that in an action for wrongful death any award of damages is to be governed by the 'pecuniary injury' resulting from the death, a presumption of pecuniary injury ordinarily exists in favor of those persons legally entitled to services, earnings or support from the decedent.

"No such presumption obtains as to collateral kindred having no legal claims on the decedent, and the infliction of 'pecuniary injury' on them by reason of the death ought to appear from the evidence before they may be considered in the award of damages."

Paragraph six of the syllabus reads:

"The term 'pecuniary injury' as used in Section 10509-167, General Code, comprehends essentially injury measured by the prospective advantages of a pecuniary nature which have been cut off by the premature death of the person from whom they would have proceeded. The term does not embrace such elements as bereavement or mental pain and suffering of the beneficiaries or the loss of the society or comfort of the deceased. * * *"

In the instant case, defense counsel made no claim that final judgment should be rendered for the defendant. He concluded his brief as follows:

"It is therefore submitted that this case should be reversed and returned to the trial court for a new trial where the jury would be confined to the evidence before it in arriving at its verdict."

I find insufficient evidence to sustain either the verdict of $25,000 or the judgment of $12,500 awarded after the order of remittitur was agreed to by the plaintiff. Therefore, such verdict was not cured by remittitur and both the verdict and judgment are against the manifest weight of the evidence.

Considering, however, the circumstances of the son

and parents as evidenced in the record, their relationship, the presumption that had the son lived he would have given financial assistance when needed, and all of the evidence relative to pecuniary loss, I find a jury question presented as to the amount, if any, that a reasonable mind could determine from the evidence in this case as the "pecuniary injury" within the meaning of that term as used in Section 2125.02, Revised Code, and interpreted by the Supreme Court of Ohio.

Where a jury question is presented, even though the jury might find the "pecuniary loss" to be small or find no "pecuniary loss," it is contrary to law for the court to render final judgment for the defendant.

Where there is sufficient evidence to have raised a jury question as to "pecuniary injury," the unanimous conclusion of all three appellate judges, that the evidence is insufficient to support either a verdict in the amount rendered or a judgment in the amount rendered after remittitur, is an expression of the conclusion that the verdict is against the manifest weight of the evidence. In such a situation, it is the sole function of the Court of Appeals to set aside the judgment and remand the cause for a new trial. See *State* v. *Geghan*, 166 Ohio St. 188.

The judgment ought to be reversed, with remand for a new trial and further proceedings according to law.

Troop, J., of the Tenth Appellate District, sitting by designation in the Fifth Appellate District.