**Joseph W. YANKANWICH and Belle Yankanwich, Defendants Below, Appellants,**

**v.**

**Lawrence E. WHARTON, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Feb. 25, 1983.

Decided: May 3, 1983.

---

Wayne N. Elliott (argued) of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendants below, appellants.

Frank J. Miller (argued) and Gerald C. Foulk of Miller and Foulk, Wilmington, for plaintiff below, appellee.

Before HERRMANN, C.J., and McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

This appeal concerns a personal injury action brought by the plaintiff, Lawrence E. Wharton, against the defendants, Joseph W. Yankanwich and his mother, Belle Yankanwich. Following a jury trial in Superior Court a verdict and judgment was entered for the plaintiff in the amount of $180,000.

I

The accident in question occurred on January 10, 1976 at about 1:00 p.m. on Smiths

Mill Road near Newark, Delaware. At the time of the accident Joseph Yankanwich (defendant) was driving a Mercury Comet.

Smiths Mill Road is a dirt and gravel back road, twelve feet wide. At the time of the accident Smiths Mill Road was covered with ice and snow. To get to Smiths Mill Road, the Comet turned off of Possum Park Road onto Nine Foot Road. Nine Foot Road is a concrete slab until it runs into Smiths Mill Road. There is a 90° turn onto Smiths Mill Road, and then Smiths Mill Road goes up an incline, levels out for a short distance and then starts downhill. As defendant made his turn onto Smiths Mill Road from Nine Foot Road he was sliding and fishtailing on the ice and was going about 25–30 mph. It was then 200–300 feet from the flat portion of the road, the place of the accident. When the Comet started up the grade, which was solid ice, it was traveling on the wrong side of the road, picking up speed and fishtailing.

At the top of the incline there is a flat area. Here the roadway was about 10 to 12 feet wide and covered with ice. Beyond the roadway on each side was an area four or five feet wide bounded by a fence. Snow and ice was piled high in this four foot area. Plaintiff's Ford stationwagon was parked on the right-hand side of the road facing the oncoming Comet. A Ford Mustang belonging to plaintiff's cousin was parked directly behind the stationwagon and was backed up to within five feet of the stationwagon facing the opposite direction. While the stationwagon protruded about three feet onto the roadway there was ample room for a vehicle six to seven feet wide to pass the parked vehicle without leaving the roadway. The distance between where the cars were parked and where Nine Foot Road entered Smiths Mill Road was 250 to 300 feet. The distance from the crest of the hill on Smiths Mill Road to where the parked cars were was 100 to 150 feet. Standing outside of the two parked cars were the plaintiff, his cousin and three friends. (A fourth friend was still in the car.) They had just arrived at the scene and were intending to sled down Smiths Mill Road. They had been sledding at the same spot earlier that day during which time they had posted lookouts at the top and bottom of the hill.

At this time plaintiff observed a jeep driven by John Maher, come up the hill in an opposite direction from that in which the defendant was traveling. Maher, a state trooper, was off duty but working a special assignment involving patrol of the game preserve. Plaintiff upon seeing the jeep proceeded to walk off the road and was between the stationwagon and Mustang. It was at this moment that plaintiff heard an engine and turned around and saw the Comet coming around the corner after leaving Nine Foot Road. When seeing the Comet, plaintiff thought it was being driven by a friend of his who was going to stop. When the Comet reached the flat area it was traveling 30 to 35 mph, fishtailing and generally out of control. When the car was 30 to 35 feet away, plaintiff saw the front wheels lock up and saw it skidding towards the stationwagon. Realizing for the first time that he was in danger and that the Comet was going to hit the stationwagon, plaintiff tried to jump out from between the stationwagon and the Mustang, but it was too late. Plaintiff was injured when the Comet struck the stationwagon causing the stationwagon to be pushed back against the Mustang, trapping plaintiff in between the two fenders.

As a result of this accident plaintiff suffered serious injuries. Plaintiff's right femur was crushed which resulted in the permanent shortening of the right leg and loss of muscle in that leg. Plaintiff has had and continues to have pain. During his rehabilitation plaintiff has been in the hospital on at least two separate occasions for at least two months. He has been bedridden on two different occasions for four and three months respectively, and he has had to wear a brace for at least a period of eight months.

At trial of this action, the Trial Court permitted over objection, the opinion testimony of Officer Maher and of the officer investigating the accident, Corporal Thomas

Hartnett, as to what would have been a safe speed under the circumstances. The Trial Court also refused to charge the jury on assumption of the risk, but did charge the jury on wanton conduct, both over the defendant's objection. Following post-trial briefing the Trial Judge refused defendant's request for new trial or remittitur in the alternative.

## II

■ Defendant's first argument in support of his appeal is that the Trial Court erred in allowing Police Officers Maher and Hartnett to testify as to what was the proper safe speed for travel on the ice-covered Smiths Mill Road. Defendant objects to both officers' testimony contending that under this Court's decision in *Szewczyk v. Doubet,* Del.Supr., 354 A.2d 426 (1976) a police officer can only offer opinions as to what was (i.e., how the accident occurred) and may not comment on what "would have been" (a safe speed). Additionally, defendant maintains that Maher's testimony was improper because (1) he testified as an expert without being identified as such in pretrial discovery in violation of *Stafford v. Sears Roebucks & Co.,* Del.Supr., 413 A.2d 1238 (1980) and (2) by offering his opinion, he went beyond the scope of testifying as to facts within his knowledge and observation under D.R.E. 701. In response, plaintiff argues that the testimony was properly admitted, and, in any event, defendant should be deemed to have waived this point in that these points were not specifically objected to at trial. Our review of the record leads us to conclude that the testimony of both police officers was proper expert opinion testimony.

Prior to the Trial Court's ruling each witness had given testimony identifying himself as a member of the Delaware State Police at the time of the accident and summarizing his experience as a state trooper. Maher had been a state trooper for a number of years prior to the accident, and had investigated hundreds of automobile accidents. At the time of the accident he was performing an off-duty job, patrolling the game preserve. He had driven the entire road about an hour prior to the accident. He was driving the road again when the accident occurred, and was an eyewitness not merely to the accident but to the condition of the road shortly prior to and at the time of the accident. With respect to the admissibility of his testimony the Trial Court ruled, "I feel that in light of that background of this witness, that it is proper and permissible for him to testify as to that question". Following this ruling Maher testified that the safe speed was "maybe 10, 15 (mph) at most".

At the time of trial Corporal Hartnett had been a state trooper for twelve years and had driven under all kinds of weather conditions during those years. He had investigated a large number of accidents. He arrived at the scene within minutes after the accident occurred traversing the same route of the defendant. He was an eyewitness to the condition of the road at about the time of the accident. In admitting Hartnett's testimony the Trial Court ruled, "Very well. The officer does enforce the—one of his functions is to enforce the motor vehicle laws. If you are couching that in terms of the motor vehicle statute, I would permit him to answer it." At this point Hartnett responded to the question of what he thought a safe speed was by stating: "When I traversed the road to go to the accident, I know I didn't go more than fifteen and even that, I was sliding a little bit. I would say 10, 15 miles an hour."

Nothing in *Szewczyk v. Doubet,* Del. Supr., 354 A.2d 426 (1976) prevents a police officer who has been properly qualified as an expert and who has personally observed the conditions of the road shortly prior to or at the time of the accident from giving his expert opinion as to what would have been a safe speed. As this Court said in *Szewczyk:*

> The investigating officer need not be an "accident reconstruction expert" as would require highly specialized and extensive training and engineering skill; by demonstrating his accident investigative training and experience, he qualifies as

an expert simply by being more skillful in the field than his fellow men not so trained or experienced. The opinion then given does not invade the province of the jury but rather aids the jury in drawing correct inferences from the physical facts as they were observed to be within a reasonable time after the accident. Id. at 428.

In that the Trial Judge found both officers to be experts by virtue of their experience in enforcing 21 *Del.C.* § 4168(a) and background as experienced police officers and our conclusion that this decision was not an abuse of discretion, we find this testimony properly admissible under D.R.E. 702. The fact that this testimony embraces the ultimate issue of negligence is of no consequence. D.R.E. 704.

 Turning to defendant's arguments concerning Maher, we find that plaintiff's failure to identify him in pre-trial discovery was not error because defendant waived this by not objecting to it at trial. When plaintiff's counsel asked Maher his opinion as to safe speed defendant's attorney objected stating:

> "Your Honor, I object. That is an area of speculation and calls for accident reconstruction expertise, and this man has not been qualified as an expert. I'm not sure that would be a proper question even to an accident reconstruction expert."

This statement is clear on its face that the defendant did not object to this question on the basis that plaintiff failed to identify the witness as an expert in pretrial discovery. His failure to raise it at the time of the question precludes it from being raised on appeal, and he is deemed to have waived it. D.R.E. 103; *Stevenson v. Henning,* Del. Supr., 268 A.2d 872 (1970). Given that we found Maher's testimony admissible under D.R.E. 702 the issues defendant raise as to the propriety of the testimony under D.R.E. 701 are moot and need not be addressed.

### III

Defendant next contends that the Trial Court erred in failing to charge the jury that plaintiff's conduct constituted an assumption of risk. We disagree with defendant's contention.

 "If the plaintiff knows of the existence of risk, appreciates the danger of it and nevertheless does not avoid it, he will be held to have assumed the risk and may not recover for his injuries." *Robinson v. Meding,* Del.Supr., 163 A.2d 272, 276 (1960). In order for plaintiff to have assumed the risk he must do so voluntarily and a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to avert harm to himself or another. *Restatement of Torts* 2d § 496E. In determining whether there is evidence of an assumption of risk by plaintiff, the standard to be applied is a subjective standard peculiar to the plaintiff. Id. at § 496(D). As comment (c) to § 496(D) of the *Restatement on Torts* states:

> The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence. If by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk, although it may still be found that his conduct is contributory negligence because it does not conform to the community standard of the reasonable man.

When the facts are viewed in a light most favorable to the defendant, it cannot be said that plaintiff assumed the risk.

 There is no evidence that plaintiff knew of the risk before defendant's Comet was too close to slow down, stop or to be properly controlled so as to avoid the accident. The evidence indicates that until the car was 30 to 35 feet away plaintiff thought it would stop. Even if plaintiff had appreciated the risk earlier, it cannot be said that he voluntarily assumed the risk. There is no evidence that prior to the time the risk became narrowed to plaintiff's location,

plaintiff had a reasonable alternative course of conduct within the time frame. Even at twenty miles per hour the Comet would have traveled 250 feet in eight and six-tenths seconds. Once the Comet started to skid plaintiff had at most five to six seconds before impact in which to determine the extent of the risk and avail himself of an alternative location. Even then he could not be sure that the Comet's path would not be altered, making the alternative location perilous. When the above facts are viewed subjectively from what the plaintiff personally saw, knew, understood and appreciated, we cannot say that he knowingly and voluntarily assumed the risk.[1]

## IV

■ Defendant's third contention is that the jury erred in not finding plaintiff contributorily negligent as a matter of law. We find no error.

Issues concerning contributory negligence are ordinarily questions reserved for the trier of fact. Only when the undisputed material facts can lead to only one conclusion, that the plaintiff was negligent, can the Trial Court find contributory negligence as a matter of law. *Johnson v. Hockessin Tractor, Inc.,* Del.Supr., 420 A.2d 154, 158 (1980); *Floyd v. Lipka,* Del.Supr., 148 A.2d 541 (1959).

■ When the facts are viewed in a light most favorable to the plaintiff, we cannot say that the only conclusion that could be reached from the facts was that plaintiff was contributorily negligent. There is evidence in the record which supports a conclusion that plaintiff's stationwagon blocked only three feet of a ten to twelve foot wide road leaving ample room for defendant's car to pass without leaving the road. There is also evidence supporting an inference that plaintiff's decision to remain where he was after seeing the Comet fishtail was not negligence because he did not become aware that it would strike the car until it

was 30 to 35 feet from it, and prior to that time he had no way to determine where a safe position would be given the unpredictability of the Comet's path.

## V

■ Defendant's fourth argument is that the Trial Court erred in instructing the jury on wanton conduct in that there was not sufficient evidence of wanton conduct to go to the jury.

Wanton conduct occurs when a person, with no intent to cause harm, performs an act so unreasonable and dangerous that he either knows or should know that there is an imminent likelihood of harm which can result. *Wagner v. Shanks,* 194 A.2d 701, 706, 707 (1963); *Aastad v. Riegel,* Del.Super., 262 A.2d 652 Affm'd 272 A.2d 715 (1970). It is an "I don't care attitude." *Wagner,* 194 A.2d at 707.

■ On the day in question Smiths Mill Road was covered with ice from the end of Nine Foot Road to the place of the accident, a distance of two to three hundred feet. The Comet was going 30 to 35 miles per hour and was sliding and fishtailing as it rounded the right turn coming off Nine Foot Road. Despite this it picked up speed as it proceeded up the hill on the wrong side of the road, still fishtailing. It came over the crest of the hill still going 30 to 35 miles per hour and still on the wrong side of the road. There it met plaintiff's car in the oncoming lane which, because of the Comet's speed and the ice, it could not avoid even though there was ample room to pass the car had the car been moving at a reasonable rate of speed. While excessive speed alone is not enough to justify a wanton conduct charge, *Rich v. Dolan,* Del. Supr., 294 A.2d 835 (1972) the above evidence indicates a conscious disregard on the part of the defendant of the road conditions, and the general manner of his driving shows an "I don't care attitude" which justified the wanton charge.

---

1. Defendant makes much of the fact that when sledding in the morning plaintiff and his friend placed lookouts. This argument focuses on the wrong risk. The proper focus is not on the risk of sledding on the hill or parking the car on the road, but on the risk created by defendant's negligent or wanton operation of his Comet.

VI

Defendant's final contention is that the verdict is excessive, and the Trial Court abused its discretion in not allowing a new trial or, in the alternative, remittitur.

"A verdict will not be disturbed as excessive unless it is so clearly so as to indicate that it was the result of passion, prejudice, partiality, or corruption; or that it was manifestly the result of disregard of the evidence or applicable rules of law. A verdict should not be set aside unless it is so grossly excessive as to shock the Court's conscience and sense of justice; and unless the injustice of allowing the verdict to stand is clear." *Riegel v. Aastad,* Del.Supr., 272 A.2d 715, 717–718 (1970).

This Court will not reverse a Trial Judge's decision on a motion for new trial on the ground of excessiveness of the verdict unless it holds that the Trial Court abused its discretion. *Stewart v. Genesco, Inc.,* Del. Supr., 406 A.2d 25, 26 (1979). Given the evidence that plaintiff suffered a permanent injury, requiring that he be bedridden for over seven months, and that he has suffered and will continue to suffer pain and discomfort, restriction of activities and permanent disfigurement for the rest of his life, we cannot say that the verdict shocks the conscience. Nor can we say that the Trial Court abused its discretion in denying a new trial or remittitur.

For the above stated reasons, the judgment of the Superior Court is

AFFIRMED.