# IN THE SUPPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| LAURA LIEBAL, as Next of Friend and Guardian of M.M., a Minor, <br><br> Plaintiff, <br><br> v. <br><br> BELVEDERE FIRE COMPANY, the BOARD OF DIRECTORS OF THE BELVEDERE FIRE COMPANY, individually and as the controlling body of the BELVEDERE FIRE COMPANY, ROBERT JOHNSON, DWAYNE PEARSON, IAN MCLARTHY, CHARLIE AIKEN, and SHIRLEY GOLDSBERRY, <br><br> Defendants. | C.A. No.: N24C-08-154 CEB |

Submitted: December 9, 2024
Decided: March 5, 2025

## MEMORANDUM OPINION

*Upon Consideration of Defendants' Motion to Dismiss*
**GRANTED in part and DENIED in part.**

Joseph D. Stanley, Esquire, and Charles W. Welch III, Esquire, Schwartz & Schwartz, Dover, Delaware. Attorneys for Plaintiff.

Daniel A. Griffith, Esquire, Whiteford Taylor & Preston, LLC, Wilmington, Delaware. Attorneys for Defendants.

**BUTLER, R. J.**

For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The Amended Complaint alleges that in 2022, M.M., a 15-year-old minor girl, ("Plaintiff"), volunteered with the Mill Creek Fire Company. During a joint training exercise between the Mill Creek Fire Company and Defendant Belvedere Volunteer Fire Company ("Belvedere"), the Deputy Fire Chief for Belvedere Dwayne Pearson ("Pearson"), began "flirting"[1] with Plaintiff. The Belvedere Fire Chief, Robert Johnson ("Johnson"), observed Pearson's behavior. Johnson contacted the Mill Creek Fire Company and learned that Plaintiff was 15 years old. Johnson warned Pearson to "stay away"[2] from Plaintiff. But Pearson did not.

The Amended Complaint says that Pearson used one of Belvedere's vehicles to pick up Plaintiff and commit sex crimes on two separate days in August 2022.[3] According to the Amended Complaint, Defendants were "fully aware of the ongoing sexual relationship."[4] In particular, Chief Johnson was allegedly "on direct notice of

---

[1] D.I. 2 Amended Compl. at 5 (Aug. 29, 2024), Trans. ID 741891114 [hereinafter "Amended Compl."].

[2] *Id.* at 5.

[3] *Id.* at 5-6.

[4] *Id.* at 6.

2

Deputy Chief Dwayne Pearson's intent to pursue a sexual relationship" with Plaintiff.[5] The Amended Complaint asserts that Chief Johnson "admitted to Mill Creek's Fire Chief that he should have paid more attention to the situation that was developing at the training exercise."[6]

Moreover, the Amended Complaint alleges that this was not Pearson's first sexual assault: in 2020 he "attacked a female member of Belvedere while on Belvedere company property by attempting to physically force her to her knees to perform oral sex on him."[7]

Despite knowing of Defendant Pearson's past alleged sexual assault, it is alleged that Board members Mclarthy, Aiken, and Goldsberry failed to supervise or discipline Defendant Pearson for his conduct with Plaintiff.[8]

Finally, it is alleged that the Board members, knowing of what Pearson had done with the Plaintiff, actively attempted to mislead the police in their investigation into Pearson's conduct.[9]

---

[5] *Id.* at 9.

[6] *Id.* at 5.

[7] *Id.* at 4.

[8] *Id.* at 10-13.

[9] *Id.* at 7.

According to the Amended Complaint, Defendants opted to demote Deputy Chief Pearson after learning of the first sexual assault, not fire him.[10] With these acts in mind, the Amended Complaint alleges that "Defendants knew or should have known that Defendant Deputy Chief Pearson was a danger to the public and minors."[11]

As a result of his sex crimes with the Plaintiff, in 2024, a jury convicted Pearson of multiple sex crimes, including rape and sexual abuse of a child by a person of trust authority or supervision.[12] He will be in prison for the foreseeable future.

## ISSUES UNDER REVIEW

Defendants have moved to dismiss the Amended Complaint on three grounds.

**First**, Defendants argue that because Deputy Chief Pearson acted "outside the scope of his employment when he committed the underlying sexual assaults," the other Defendants cannot be liable under a theory of *respondeat superior*.[13]

Plaintiff responds that an employer can be liable for the acts of an employee

---

[10] *Id.*

[11] *Id.* at 9.

[12] D.I. 35 Sentence Order at 1-2 Order (June 14, 2024), *State v. Pearson*, No. 2301003924.

[13] D.I. 4 Defs.' Opening Br. in Supp. of Mot. to Dismiss at 6 (Oct. 14, 2024), Trans. ID 74748699 [hereinafter Defs.' Opening Br.].

4

that are outside the scope of his employment *if* the employer was negligent or reckless.[14]

**Second**, Defendants claim that absent "any relationship—contractual, fiduciary, statutory, or otherwise"[15] between Plaintiff and Defendants, no liability can attach to them.

In response, Plaintiff argues that Section 317 of the Restatement Second of Torts creates an "affirmative duty to keep the public, and in particular a minor junior volunteer of a sister volunteer fire company, safe while they are under the control of one of its officers and while they are in or on Belvedere property."[16] As a result, Defendants did have a duty towards Plaintiff.

**Third**, Defendants claim governmental immunity for discretionary functions or duties. The argument is that Defendant's decision on whether to keep Pearson on the premises after his previous sexual assault was an exercise of discretion and therefore is immune from suit.[17] Moreover, the limited exception to government immunity for harm caused by motor vehicles does not apply.[18]

---

[14] D.I. 18 Pl.'s Answering Br. at 11-12 (Nov. 18, 2024), Trans. ID 75177855 [hereinafter Pl.'s Answering Br.].

[15] Defs.' Opening Br. at 13.

[16] Pl.'s Answering Br. at 16.

[17] Defs.' Opening Br. at 14-15.

[18] *Id.* at 15-16.

Plaintiff counters that: 1) the motor vehicle exception in 10 *Del. C.* § 4012(1) applies because the decision to allow Defendant Pearson to use one of Defendant Belvedere's vehicles was a ministerial act;[19] and 2) Defendants acted with "wanton negligence" and such conduct is an exception to the immunity shield under 10 *Del. C.* § 4011(c).[20]

## STANDARD OF REVIEW

For a 12(b)(6) motion to dismiss, the court 1) accepts all well pled factual allegations as true; 2) draws all reasonable inferences in favor of the non-moving party; and 3) denies the motion to dismiss if the plaintiff is "entitled to recover under any reasonably conceivable set of circumstances.'"[21] Dismissal is appropriate when "plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[22] The court may grant a 12(b)(6) motion to dismiss if the complaint "is clearly without merit, which may be a matter of law or fact."[23]

---

[19] Pl.'s Answering Br. at 22.

[20] *Id.* at 24-25.

[21] *Lewandowski v. City of Wilmington*, 2017 WL 3264037, at *1 (Del. Super. July 31, 2017) (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

[22] *Black v. New Castle Cnty.*, 2021 WL 4191453, at *2 (Del. Super. Sept. 14, 2021) (quoting *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Aug. 20, 2004)).

[23] *Sekscinski v. Harris*, 2006 WL 509541, at *1 (Del. Super. Jan. 18, 2006) (quoting *Read v. Carpenter*, 1995 WL 945544, at *1 (Del. Super. June 8, 1995), *aff'd*, 670 A.2d 1340 (Del. 1995)).

## ANALYSIS

**1.  Volunteer fire companies are immune under 10 *Del. C.* § 4011(a).**

We begin by recognizing that 10 *Del. C.* § 4011(a) grants governmental entities "immunity in the broadest terms possible"[24]: "all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages."[25] The term "governmental entity" includes "all registered volunteer fire companies and volunteer rescue squads."[26] For purposes of this statute, "volunteer firefighters" and "rescue squad members" are employees are immunized,[27] except when the employees act with wanton negligence or wilful and malicious intent.[28]

So we start from a place where immunity is presumed and recognize that exceptions or exclusions are narrow.  The question becomes whether and to what

---

[24] *Rishell v. Hartly Volunteer Fire Co.*, 2024 WL 385718, at *3 (Del. Super. Jan. 31, 2024) (quoting 10 *Del. C.* § 4011(a)).

[25] 10 *Del. C.* § 4011(a).

[26] 10 *Del. C.* § 4010(2).

[27] 10 *Del. C.* § 4010(1).

[28] 10 *Del. C.* § 4011(c).

extent does the Amended Complaint overcome this statutory grant of presumptive immunity.

As to Defendant Belvedere, it is immune, subject to 3 limited exceptions 1) involving "ownership, maintenance or use of motor vehicles," 2) "construction, operation or maintenance of public buildings," and the 3) "sudden and accidental" discharge of pollutants.[29]

While the Amended Complaint alleges that Pearson used a Belvedere owned vehicle to drive the Plaintiff to a location where he assaulted her, Plaintiff points to no case in which immunity has been defeated on such facts. Rather the immunity waiver is limited to cases in which the negligent use of the motor vehicle causes "property damage, bodily injury or death."[30] One might notice that these are the uses typically associated with automobile insurance. It is a fair presumption that the government waives immunity for acts that are usually and easily insurable. Acts like those undertaken by Pearson here are not those typically covered by an auto

---

[29] 10 *Del. C.* § 4012(1)-(3).

[30] 10 *Del. C.* § 4011(c).

insurance policy. Put in decisional terms, the automobile exception to immunity applies only when the vehicle itself is the instrument of the harm."[31]

No exception to immunity being apparent, Belvedere Fire Company is immune and is dismissed as a Defendant from this suit.

### 2. Directors and employees are immune. With Limitations

Moving on to the allegations concerning individual Board Members of Belvedere, the Court has previously noted that "if a municipality, who can only act through its agents, 'could be held liable for the acts of its employees under *respondeat superior*, the Tort Claims Act [as it applies to Section 4011] would be rendered meaningless.'"[32] Similarly, if this Court found that immunity did not apply to the Directors of the Fire Company, then the immunity granted the Fire Company

---

[31] *Sussex Cnty. v. Morris*, 610 A.2d 1354, 1360 (Del. 1992); *see also McCaffrey v. City of Wilmington*, 133 A.3d 536, 551 (Del. 2016) (citing *Morris*, 610 A.2d at 1359–60) ("The exception applies to the use of automobiles, but only when the automobile itself causes harm."); *Zak v. GPM Invs., LLC*, 2013 WL 1859344, at *4 (Del. Super. Apr. 30, 2013) (citing *Hedrick v. Webb*, 2004 WL 2735517, at *12 (Del. Super. Nov. 22, 2004)) (held the motor vehicle exception did not apply because 1) the plaintiff did not allege that the defendants' use of the motor vehicle was negligent, and 2) the motor vehicle was not the instrument of the harm); *Sadler v. New Castle Cnty.*, 565 A.2d 917, 922 (Del. 1989) (held there was no allegation that the harm occurred "because any of the assorted items of rescue equipment were defective when used in his rescue," so no exception in 10 *Del. C.* § 4012 applied).

[32] *Montgomery-Foraker v. Christina Sch. Dist.*, 2013 WL 6113244, at *3 (Del. Super. Oct. 30, 2013) (quoting *Washington v. Wilmington Police Dep't*, 1995 WL 654158, at *3 (Del. Super. Sept. 18, 1995)) (bracketed material original).

would likewise be meaningless. Plaintiff has not articulated any reason why the Board members – as Board members – should not be immune, and the Court sees none either.[33]

### 3. The individual Defendants may be personally liable if they acted with "wanton negligence."

As noted above, immunity for governmental entities and their employees is the rule, but an exception to immunity provides that:

> An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or wilful and malicious intent.[34]

Wanton negligence means that a person "with no intent to cause harm, performs an act so unreasonable and dangerous that he either knows or should know that there is an imminent likelihood of harm which can result."[35] Plaintiffs "must

---

[33] A governmental entity employee can have immunity in their official capacity, but not in their individual capacity. *See e.g.*, *Dollard v. Callery*, 185 A.3d 694, 710 (Del. Super. 2018) (held police officer was immune in his official capacity but not immune in his individual capacity for purposes of 42 U.S.C. § 1983); *Shellburne, Inc. v. Roberts*, 498, 238 A.2d 331, 339 (Del. 1967) (distinguished between immunity for officials acting as officials and officials acting in an individual capacity).

[34] 10 *Del. C.* § 4011(c); *see also Hedrick*, 2004 WL 2735517, at *11.

[35] *Sadler*, 524 A.2d at 23 (citing *Yankanwich v. Wharton*, 460 A.2d 1326, 1331 (Del. 1983)).

plead wanton negligence in order to challenge the defendant's immunity under the Tort Claims Act."[36]

Plaintiff in this matter, clearly aware of the pleading burden placed upon her to bring this claim outside the protections of the immunity statute, takes aim at the individual defendants with several allegations of wrongdoing. Defendant Pearson is clearly not immune, for his conduct was about as wanton as it gets.

As to Chief Johnson, the allegation is that he had direct knowledge that the Plaintiff was a minor and that Pearson was "flirting" with her.[37] The Amended Complaint references his admission that he did not make as thorough an inquiry as he should have.[38] Further, it is alleged that Johnson and the remaining Board members were all aware of Pearson's prior sexual assault, at Belvedere, yet permitted him to remain as Deputy Chief.[39] Whether this satisfies the "wanton negligence" standard, we must await a fuller record.

The allegations as to Board members Mclarthy, Aiken, and Goldsberry are weakest because they are partly based on "information and belief" and appear

---

[36] *Id.* at 7 (citing *Smith v. New Castle County Vocational-Technical Sch. Dist.,* 574 F. Supp. 813, 823 (D.Del.1983)).

[37] Amended Compl. at 5.

[38] *Id.*

[39] *Id.* at 6.

confined to their alleged conspiracy to protect Pearson from discovery by the police investigation and their failure to remove him after the earlier sexual assault.[40]

Mindful that no discovery has been taken and Plaintiff is entitled to all reasonable inferences in her favor at this motion to dismiss phase, the Court is unable to dismiss the Amended Complaint as to the individual Defendants. For example, the Court must assume that Defendant Board members Mclarthy, Aiken, and Goldsberry were fully aware of the previous sexual assault and actively attempted to help Pearson evade criminal investigation.[41] It is simply too soon to determine what these defendants knew and whether there is evidence supporting the serious allegations against them.[42]  Likewise, the Court has no context in which to judge whether these alleged defalcations were wanton negligence.  The Court must let these allegations of the Amended Complaint pass to discovery, after which a more complete factual record may reveal whether Plaintiff has a triable case against some or all of the Defendants.

---

[40] *Id.* at 6-7, 15-17.

[41] *Id.* at 6-7.

[42] *Fay v. Concord Pike Seasons Pizza & Rest., Inc.*, 2024 WL 140287, at *2 (Del. Super. Jan. 11, 2024) (denied a motion to dismiss because discovery was needed to establish whether plaintiff had a triable case).

## CONCLUSION

The motion to dismiss is **GRANTED** as to the Belvedere Volunteer Fire Company and the Board of Directors in their official capacity as members of the Board. The motion to dismiss is **DENIED** as to Defendants Johnson, Pearson, Mclarthy, Aiken, and Goldsberry in their individual capacity, without prejudice to renew their motions after discovery is completed.

**IT IS SO ORDERED.**

**/s/ Charles E. Butler**
Charles E. Butler, Resident Judge